THE CINCINNATI, WILMINGTON AND ZANESVILLE RAILROAD COMPANY v. THOMAS ILIFF.

1 Where a contract in writing is given in evidence to a jury, but the same is not read in the hearing of the court, nor the attention of the court otherwise specially called to its provisions, the failure of the court to construe the contract, and to charge the jury as to its legal effect, is not error. If, in such case, parties desire from the court a legal construction of written instruments in evidence, it is their duty to request it.

2 The delivery by the releasor, of an otherwise perfectly executed deed of release, to a known agent of the releasee, is, in law, a delivery to the principal; and it will be operative, according to its terms, from the time of such delivery, no matter what verbal stipulations or conditions may have accompanied its delivery in respect to the *operation* of the deed *after* delivery.

3 But the mere delivery of manual possession of the deed, is not necessarily a delivery of the deed; and in cases where an acceptance of an agency from both involves no violation of duty to either, it is competent for the releasor to make the agent of the releasee his own agent, for the purpose of holding the deed as an escrow, and returning it to him, the releasor, in case of the nonperformance of a stipulated condition. There is no such personal identity between the releasee and his agent as to preclude the latter from becoming the depositary of an escrow.

ERROR to the district court of Perry county.

The original action was brought by Iliff against the rail·road company in the court of common pleas of Perry county.

The petition contains two counts.

In the first count, Iliff states that, about the 1st of April, 1853, the railroad company, by its agents, entered upon his lands for the purpose of constructing its railroad, and threw down the fences, and exposed about one hundred acres of his tillable and meadow land to the trespass of cattle and other trespassing animals, and that said company continued, until about the 1st of November, 1853, to dig and despoil the lands by making sundry excavations therein, and throwing up divers embankments thereon, and in cutting and removing divers fruit and forest trees, and placing the same on other portions of his lands, so as to prepare the lands thus excavated and embanked for the use of its said road; thereby appropriating to its use about twenty acres of his land, of the value of seventy-five dollars per acre, along the line of its railroad, against the plaintiff's consent, and to his damage, etc.

In the second count of the plaintiff's petition, the averments are, in substance :

That in the fall of 1851, and for a long time thereafter, there were contemplated rival routes for said company's railroad through Perry county, and that great efforts were made by citizens along the respective routes to procure the location of the road along the line in which they were interested.

That efforts were made by the citizens of the town of New Lexington and its vicinity, to induce the company to locate its road on the New Lexington route. That on the 9th February, 1852, Benjamin Carrol and Horace C. Granger, being, with others, interested in procuring the location of the road on that route, in order to induce the directors of the company to select that route, were engaged in procuring from land-holders the right of way along the same, and, among others, called upon the plaintiff and solicited from him a gratuitous conveyance of the right of way to the company through his lands. That he declined to execute such conveyance at first, but upon the representations of said Carrol and Granger

that if the plaintiff would execute such conveyance they could obtain a like conveyance from his neighbors Cherry, Crosby and Reed, adjoining landholders on said route; and that if the plaintiff would execute such release of the right of way through his lands, and said Cherry, Crosby and Reed should decline to do likewise, on the same day, the release thus executed by the plaintiff should not be delivered to the company, but be surrendered back to him.

That the said Carrol or Granger, but which of them plaintiff does not recollect, at the same time, and as another inducement to the plaintiff to execute said release of the right of way, represented to him that, as the surface of the lands of the plaintiff through which it was supposed the railroad would be located was level, it was probable that not more than eight or ten feet in width would be required for the road, and that the plaintiff might cultivate his lands up to the side of the road, and thus would be deprived of but a small quantity of land.

That upon the condition mentioned, and influenced to some extent by the representations as to the quantity of land that would likely be taken for the road, and upon no other condition or consideration, he executed a certain instrument purporting to convey to the company the right of way through his lands for its road, and delivered the same to said Carrol, coupled with the condition aforesaid, and that he then, and has ever since, regarded the delivery of said paper to Carrol as merely a conditional delivery, and that he was not authorized to surrender the same to the company except in the contingency upon which the delivery was made.

That said Cherry, Crosby and Reed did not, nor did either of them, ever execute to the company conveyances of rights of way through their respective lands, similar to the one executed by the plaintiff, although on the same day, or soon thereafter, they executed conditional or qualified rights of way to the company, coupled with certain special agreements not fully known to the plaintiff, but not such instruments as met the condition upon which alone Carrol was authorized to

deliver to the company the instrument the plaintiff had executed and placed in his hands.

That the company, instead of using only from eight to ten feet in width of his land, occupies sixteen to twenty feet in width, for the distance of about one half of a mile, and about one hundred feet in width for a further distance of about one mile; thereby incumbering the plaintiff's lands much more than Carrol and Granger represented it would.

That contrary to said condition upon which the plaintiff delivered his said release of the right of way through his lands to Carrol, and without the plaintiff's consent, the same was, in fraud of his rights, delivered to the company; and that thereunder the company has entered upon his lands and converted about twenty acres thereof to its use for the railroad; and hath committed and continues to commit great waste and damage thereto, to his injury, etc.

That the said instrument of release, of which exhibit A, attached to the petition, purports to be a copy, was furnished by the company, was, at the time he signed it and made the conditional delivery of it to Carrol, without any consideration named therein; and that, after such delivery, and without the knowledge or consent of the plaintiff, the instrument was altered by inserting therein the words " one dollar," after the words " in consideration of."

The petition prays that the railroad company may be restrained from further prosecuting the construction of its road through the plaintiff's lands, and that said release of the right of way may be canceled as null and void.

The release of the right of way, dated February 9, 1852, mentioned in the second count of the plaintiff's petition, signed and sealed by him, reads as follows :

" In consideration of one dollar to be paid by the Cincinnati, Wilmington and Zanesville Railroad Co., we do hereby grant and release to said company the right to enter upon any lands I own, which lie in the line of said company's road, surveyed and adopted by them (or intended to be surveyed and adopted by them), and the right to run in curves, and amend the line in the final construction of such railroad over

said land, and to hold and use a strip thereof to be selected by the engineer, not exceeding one hundred feet in width, for the purposes of a railroad, so long as may be necessary. Witness my hand," etc.

To the second and amended count of the petition, the railroad company demurred, on the ground that there was " a misjoinder of causes of action therein." The demurrer was sustained.

To the first count of the petition the company answered :

That on the 9th of February, 1852, the company procured from the plaintiff the right of way over his lands mentioned in the petition, by the instrument of release copied above ; and that by virtue of that instrument, the company at the time stated in the petition, entered upon said lands, as it had a right to do, for the purpose of constructing its railroad, and commenced work upon the line of the road as surveyed and adopted by the company, confining itself to the limits of one hundred feet in width of said lands as granted by said instrument of writing.

That in constructing the road through said lands, the company did no unnecessary damage to the other lands of the plaintiff along the line of the road, or to any other property of the plaintiff, but did as little injury to the plaintiff's lands and other property as was possible.

The case was taken to the district court by appeal, and therein came to trial at the September term, 1859, to a jury, and resulted in a verdict and judgment for the plaintiff.

From a bill of exceptions made a part of the record, it appears that at the trial in the district court, the plaintiff, to maintain the issue on his part, offered evidence to the jury tending to prove that the company, prior to the commencement of the suit, opened its roadway through his farm one hundred feet wide, and nearly a mile and a half in length Also, that in the execution of the work upon said road, he sustained damages outside of the roadway, in this : that his grass, meadows and grain fields, which were inclosed with fences, were necessarily passed through in hauling stone for a culvert in said roadway, and that the meadows, grass and

grain were greatly injured and destroyed by cattle and other stock, in consequence of the inclosures being left open by the teamsters, who, in hauling the stone, passed and repassed. Also, that he had sustained a large amount of damage outside of the roadbed, in consequence of the deposit, by the company, of timber and trees cut thereon, upon the plaintiff's lands adjacent to the roadway.

The plaintiff then rested his case.

Thereupon the company offered in evidence to the jury the release of the right of way above mentioned.

The company offered also in evidence to the jury, a written contract between one Chamberlain and the company, for the construction of its road by him, east of Lancaster, and embracing that part of the road running through the plaintiff's farm.  That contract is voluminous in its provisions, and as no question arises out of them, it is unnecessary to embody it in this statement of the case.

The company offered evidence to the jury, tending to prove also, that all the injuries complained of by the plaintiff outside of the roadbed, were done by Chamberlain and his employees, in the execution of said written contract.

The company then rested its case.

Thereupon the plaintiff offered evidence to the jury tending to prove that the release of the right of way executed by him, and given in evidence by the company, was, on the day of its date, by him placed in the hands of Carrol, as an escrow, with authority to deliver it to the company, upon the condition that three of his neighbors, Reed, Crosby and Cherry should execute and· deliver to the company, like unconditional releases of rights of way through their respective farms, and that, if these neighbors failed to do so, then the plaintiff's release should be returned to him, and not delivered to the company ; and that Carrol promised to hold such release on such condition, and return it to the plaintiff if the condition was not complied with ; and that such condition had not been complied with—that said Reed, Crosby and Cherry did not execute and deliver releases of rights of way

as provided for in said condition, but only special contracts touching the right of way through their respective farms.

Thereupon the plaintiff rested.

The company then offered evidence to the jury, tending to prove, that some months prior to the date of the plaintiff's release, the company, through properly authorized officers, had employed said Carrol, for a compensation to be paid him therefor, as its agent, to procure the right of way for its railroad through the county, and that the plaintiff, when he delivered the release to Carrol, knew of the existence of such agency.

The company, then, again rested.

Thereupon the court charged the jury, among other things, as follows :

1. That if they found that the release of the plaintiff was executed and delivered by him to Carrol, upon the condition herein before stated, and that the condition had not been performed at the time Carrol delivered the release to the company, the same was obligatory upon the plaintiff, if he knew, or had good reason to believe, at the time he so delivered the release to Carrol, that Carrol was the agent of the company for the purpose of procuring for it the right of way for its railroad through the county, unless Carrol was distinctly constituted the plaintiff's agent, as well as the agent of the company, for the purpose of holding and returning to him the paper in case of the nonperformance of the condition ; and that this could be done, although the plaintiff knew that Carrol was acting as the agent of the company in obtaining such right of way; that it was competent for the plaintiff, by plain and distinct terms, to constitute Carrol his own agent for the purpose of holding the release and returning it in case of the nonperformance of the condition ; and that it made no difference that the company did not know of, or give its consent to such agency in behalf of the plaintiff.

2. The written contract for the construction of the railroad having been, by consent of parties, offered in evidence to the jury in open court, without reading the same in their hearing, or in that of the court, and without having been

specially submitted to the inspection of the court, otherwise than that it was part of the evidence in the case, introduced, in the ordinary way, and remained as testimony in the case, the court charged the jury that they should carefully examine the same, and from it ascertain and determine whether the company reserved to itself the right to control the mode and manner of constructing the road by Chamberlain under the contract, and if they found from the contract that the company did reserve the right so to control the mode and manner of constructing the road, then, as to the damage sustained by the plaintiff outside of the one hundred feet not covered by the release, and also as to the damage done inside of said one hundred feet, in case they found, on the evidence and the law as before given, the release to be inoperative, the company was liable to the plaintiff for all damages he had proved he had sustained in the construction of said road, in all respects falling within the limits of the right of the company so reserved to direct and control; that beyond those limits the company would be responsible only so far as the construction of the road, by a reasonable necessity, involved the doing of the damage complained of.

To this charge of the court, the company excepted, and to reverse the judgment of the district court, filed a petition in error in this court. The errors assigned are that the district court erred:

1. In charging the jury that it was competent for Iliff to constitute Carrol as his agent, to hold the release of the right of way as an escrow, although Iliff knew that Carrol was, at the same time, also the agent of the company for procuring releases of rights of way along the route of its road. And that it made no difference, in that behalf, that the company did not know of, or give its consent to such agency in behalf of Iliff.

2. In charging the jury that they should carefully examine the written contract between the company and Chamberlain, and from it determine whether the company reserved to itself the right to control the mode and manner of constructing the road by Chamberlain, under the contract.

3. In not itself giving a construction of the contract to the jury, as to whether the company had not, by the contract, reserved to itself the right to control the mode and manner of constructing the road by Chamberlain, under and by virtue of the contract.

4. In charging the jury that the company would be liable to Iliff beyond the limits of the release of the right of way, so far as a construction of the road, by a reasonable necessity involved the doing of the damage complained of.

*P. Van Trump* and *Brasee & Son*, for plaintiff in error:

1. An escrow, an instrument delivered to take effect upon the happening of some event consistent with its terms, must be delivered to a third party—to a stranger. It can not be thus conditionally delivered to the grantee or his agent; for the condition being in parol, and contrary to the terms of the instrument, is inadmissible as evidence, and the delivery is absolute, and it takes effect presently. 23 Wend. 45; 4 Pick. 520; 8 Mass. 238; 10 Wend. 313; 1 Selden, 229.

In view of this well-settled rule of law, the evidence as to the condition attending the delivery of the release, ought not to have been permitted to be given to the jury; and the charge of the court in that behalf was erroneous.

The court erred in charging the jury that Iliff, without the knowledge or assent of the railroad company, could constitute *its* agent as *his* agent, in the delivery of the release of the right of way. Iliff could no more deliver this deed to Carrol as an escrow, knowing him to be the agent of the company, than he could have done so to the company itself. Nor could he constitute him *his own agent*, without the full consent of both parties, that he should so act. To permit an agent to be tampered with in that way, would open wide the gate to fraud. The delivery, therefore, of this deed to Carrol, was, in law, an absolute and unqualified delivery to his principal, the railroad company.

2. The court erred in permitting the jury to put a *construction* (for that is what the charge amounted to) upon the

contract between the railroad company and Chamberlain. Whether the company reserved to itself the power so to control the contractor in and under the contract in the construction of the road, as would render the company liable to third persons for the acts of Chamberlain, was, purely and nakedly, a question of law for the court to determine, and with which the jury had nothing to do. This question of law was not submitted to the jury by consent of parties. The consent of parties went no farther than that the contract might be offered in evidence.

It will not do to say that the jury gave the proper construc-tion to the contract in deciding the proposition of law submitted to them, and held that the company did have control of the " mode and manner " of conducting the work, and was liable for injuries outside the one hundred feet, and that, therefore, because the decision of the jury upon this legal proposition was right, the company can not complain. There is nothing in the record to show that the contract ever has been construed either by court or jury.

*Hunter & Daugherty*, for defendant in error :

1. The court did not err in its instructions to the jury, re-specting the delivery of the alleged grant of the right of way.

The effect of the instructions given was, that the *grantor* might make the agent of the grantee *his* (the grantor's) agent, by delivering the instrument to him to be held subject to the performance of a condition upon which it was to be absolute, etc.

The affirmative of this proposition seems to be so obvious, that we do not deem it necessary to argue it further than to say that there does not seem to be any good reason why, in a collateral matter like this, the same person may not be the agent of both grantor and grantee. He is a mere depositary for convenience.

The charge of the court, as given, was carefully guarded, so as to admit of the instrument having its proper effect, if the contingency happened; and the record shows that it never

did, in fact, happen, and that it would be a perversion of the intention of the parties to make it obligatory upon the defendant.

2. The court did not err in its instructions in regard to the contract between the company and Chamberlain.

As to injuries within the line of the road, the only question as to the plaintiff's right to recover depended upon the alleged grant of the right of way. If that was found by the jury, under the instructions of the court, to be void by reason of nonperformance of the condition, the right of the plaintiff to recover such damages as the jury should find he had sustained, does not seem to have been controverted.

As to damages sustained outside of the line of the road, the defense was, in substance, that the injury complained of, was committed, if any, by Chamberlain, the contractor, and his employees, for whose acts in that regard, the defendant upon the footing of its contract with Chamberlain, was in no wise liable. This necessarily involved a construction of the contract. And it is said, that it was the duty and business of the court to interpret the contract, and not to refer its interpretation to the jury. We do not deny the soundness of this, as an abstract proposition of law; but it does not necessarily follow that it is a cause for reversing the judgment. We submit that, from the peculiar language of the bill of exceptions, it is manifest that the parties assented in open court that the *effect* of the contract should be submitted to the jury, upon the question whether the company reserved to itself the right to control the *mode* and *manner* of constructing the road. The court correctly laid down the rule to the jury, from which, as a matter of law, upon a right reading of the contract, they should know whether or not the company was liable for the outside trespasses of the contractor.

Again, the verdict shows that the jury gave a true and proper construction to the contract, and that the plaintiff has nothing to complain of. 4 Ohio St. Rep. 416; 5 Ohio St. Rep. 38.

*W. E. Finck,* also for defendant in error, upon the question, whether Iliff could constitute the agent of the company his agent to hold the instrument of release as an escrow, cited the following authorities: *Fairbank's Adm'r* v. *Metcalfe,* 8 Mass. 231; *Lessee of Lloyd* v. *Giddings,* 7 Ohio Rep. 375; *The Southern Life Insurance and Trust Company et al.* v. *Cole,* 4 Florida Rep. 359; *Ogden* v. *Ogden,* 4 Ohio St. Rep. 182.

BRINKERHOFF, J.—To give a construction to and to declare the legal effect of contracts introduced in evidence to a jury, is undoubtedly the proper function of the court; and it is the duty of the court, before whom the case is tried, so to do, if requested. But under the circumstances disclosed in the bill of exceptions, the failure of the court below to do so in this case involves no error. It would seem that by the voluntary acts, and actual or tacit consent of counsel on both sides, the contract between the railroad company and Chamberlain for the construction of the road, was formally offered and received as a part of the evidence in the case; but, as is quite common in practice, when neither party desires to have the written evidence adduced construed by the court, and when both parties are willing to trust its reading and interpretation to the jury, it was not read to either court or jury; the attention of the court was not specially called to its provisions; no request was made for its construction by the court; and it was probably permitted to lie upon the table of counsel until the jury retired to deliberate on the verdict to be rendered, and then, with other evidence, it was handed to them. To claim that the failure of the court to construe the contract under these circumstances is error, would be unfair, alike to the court and to the opposite party; and if the claim were sustained, it would sanction what would often be a surprise upon both. If a party desires the construction of the court in regard to the contents of a written instrument in evidence, he must in some way manifest such desire.

On the supposititious state of fact, to be found by the jury on an examination of said contract, the court laid down the

rule correctly, and in strict accordance with the ruling of this court in *Cincinnati* v. *Stone*, 5 Ohio St. Rep. 38. It charged, "that if they found from the contract, that the company did reserve the right to control the mode and manner of constructing the road, then, as to the damage sustained by the plaintiff outside of the one hundred feet not covered by the release, and also as to the damage done inside of said one hundred feet, in case they found, on the evidence and the law as before given, the release to be inoperative, the company was liable to the plaintiff for all damages he had proved he had sustained." And to guard against the possible inference, from this general proposition, that the company might be held responsible for injuries by the contractor or his employees, growing out of acts not within the company's reserved power to control, or for injuries not by a reasonable necessity involved in the very act of constructing the road, the court adds : " in all respects falling within the limits of the right of the company so reserved to direct and control ;" and " that, beyond those limits, the company would be responsible only so far as the construction of the road, by a reasonable necessity, involved the doing of the damage complained of."

I have considered the last exceptions first ; for the reason that in respect to them, the majority of the court is very clear in the opinion that there was no error in the court below.

The first exception presents a question of more doubt and difficulty, but in respect to that also, the majority of the court is of opinion that there was no error.

The action was brought to recover damages for an alleged trespass upon, and appropriation of the plaintiff's land, for the construction and use of a railroad. The railroad company answered, setting up, in bar of the action, an alleged release of the right of way to it by the plaintiff. The signing and sealing of the instrument of release was not contested by the plaintiff. But the point of contest was, whether the release had ever become operative by what, in law, amounted to an effective delivery. The record shows, and it was admitted

on all hands, that the paper, after being signed and sealed, was put into the hands of one Carrol, who was an agent of the company to procure the right of way for its road, and who subsequently delivered the paper into the possession of the company without any other authority from the plaintiff than what was given by him when he parted with its immediate custody.

From the tenor of the charge of the court below to the jury, it would seem to have been claimed there in behalf of the company, as it is claimed here, that the act of the plaintiff, in handing over the instrument of release to a known agent of the company to procure the right of way for its road, was, of itself, and *necessarily*, in law, an effective delivery to the company.

On the part of the plaintiff, it seems to have been contended, as it is contended here, that he did not deliver the paper as a completed instrument of release to Carrol, as the agent of the company, to accept such delivery; but that, at the time he handed the paper over to Carrol, he distinctly constituted him his own agent, or depositary, to hold the instrument as an escrow, until the performance of the condition mentioned in the statement of the case; and, in case of its nonperformance, to return it to him; and that such act of handing the paper over to Carrol, was not, in law, a delivery to the company.

Such being the claims of the parties respectively, and evidence having been given by both parties in support of their respective claims, as to matters of fact, the court below charged the jury—"that if they found the release of the plaintiff was executed, and delivered by him to Carrol, upon the condition hereinbefore stated, and that the condition had not been performed at the time Carrol delivered the release to the company, *the same was obligatory upon the plaintiff*, if he knew, or had good reason to believe, at the time he so delivered the release to Carrol, that Carrol was the agent of the company for the purpose of procuring for it the right of way for its railroad through the county; *unless* Carrol was distinctly constituted the plaintiff's agent, as well as the

agent of the company, for the purpose of holding and *returning to him* the paper, in case of the nonperformance of the condition; and that this could be done, although the plaintiff knew that Carrol was acting as the agent of the company in obtaining such right of way; that it was competent for the plaintiff, by plain and distinct terms, to constitute Carrol his own agent, for the purpose of holding the release, and returning it in case of the nonperformance of the condition; and that it made no difference that the company did not know of, or give its consent to, such agency in behalf of the plaintiff."

The correctness of the first part of this charge is not controverted. It is certainly a distinct and unequivocal recognition and application of the general and undisputed doctrine, that a delivery of an instrument of grant, or release, to a known agent of the grantee or releasee, is, in law, a delivery to the principal; and that the instrument will be effective according to its terms, no matter what verbal stipulations may have been made at the time of its delivery, in respect to its *operation* after delivery. There can be no doubt, according to the uniform current of authority, that if, in this case, the instrument of release had been, as a completed instrument, delivered to Carrol simply as the agent of the company to procure the right of way, although the delivery may have been accompanied by verbal stipulations that the instrument should not *operate* as a release, until and unless certain conditions were first performed, the release would have been operative according to its terms, and the verbal stipulations in respect to its operation after delivery, would have amounted to nothing. And this view of the law of the case upon the state of fact supposed, is not only consistent with the first part of the charge of the court, but is plainly declared by it.

But a delivery of an instrument of release, as a completed and fully executed instrument, to a known agent of the grantee, acting simply in the character of such agent, is one thing; and the act of placing such instrument in the hands of the same person—placing it in his hands, not to be by him handed over to the releasee at all events, but to be re-

tained by him, and returned to the releasor in case of the nonperformance of a condition named—the paper to be held by him, and, in case of the nonperformance of the condition, returned, as the agent or depositary of the releasor, and his selected custodian of the instrument for that purpose, is certainly a different thing in point of fact, whatever it may be in point of law. The word "agent" is used by the court below to designate the supposed relation between the plaintiff and Carrol. Perhaps "depositary" or "custodian" would have been a better word; but, as his supposed functions are fully defined in the charge, the word employed is of no moment.

It is on the hypothesis that the jury should find this latter state of fact to be true, that the remainder of the charge of the court below proceeds, and in which it is insisted that error has intervened. And so the question is raised, not whether delivery to a known agent is, in law, a delivery to the principal—for that was, in effect, distinctly charged by the court below; but whether Carrol's agency for the company was so incompatable with the relation of agent or depositary of the plaintiff, and his custodian of the paper, as to legally incapacitate him for the acceptance of the latter relation. The majority of the court has been unable to see, either in principle or authority, any solid foundation on which the proposition involved in the affirmative of this question can rest.

And, first, how stands the question on principle? Carrol, for aught that appears in the record, was a man of full age, of sound mind, and under no duress or undue influence. He was under no personal disability to assume any lawful relation open to citizens in general. And, if there were no necessary conflict between the two, he was as free to accept an agency from the plaintiff, as he had before been to accept one from the company. No such necessary conflict is shown in the case. He was the agent of the company for the purpose of procuring releases of the right of way for its road. But how was he to procure them? By fraud or other undue means; by the grabbing and appropriation of instruments

signed and sealed, but not delivered, nor intended to be delivered, as completed and fully executed instruments; or in any way other than by the free consent of the ıeleasors? Certainly not. Nothing of the kind can be presumed, nor could the law recognize the valid existence of any such agency, if an attempt had been made to create it. If, then, the plaintiff, having signed and sealed the instrument of release, had handed the same to Carrol, and formally said, "I hereby hand you, as *my* agent and depositary, this paper, to be held and retained by you until the condition heretofore named and understood between us has been performed; and, in case of its nonperformance, the same is by you to be returned to me;" what was there, either in the relations or obligations of Carrol to the company, to prevent his acceptance of this trust? What duty to the company would he thereby violate? If this instrument had been handed over to a person who was an entire stranger to the company, under similar instructions and conditions, and with similar restrictions on his authority, it is clear that it would be but an escrow; and had he, in violation of his trust, delivered it to the company, it would have been, in the hands of the company, entirely inoperative. And the same result must follow, if the acceptance of this trust by Carrol from the plaintiff involved the violation of no duty which he owed to the company. And, so far as I am able to see, there was no necessary antagonism between the duties which, as its agent, he owed to the company, and those which the charge of the court below supposes him to have assumed to the plaintiff. He could faithfully discharge his duty to either, without a violation of duty to the other; and therefore, on principle, the law could impose upon him no disability to prevent his acceptance of both.

And, looking into the books, we do not find anything to shake, but do find something to sustain, our position on this question. Counsel for plaintiff in error have been diligent in their researches, and they cite us to numerous cases; all of which, however, go only to assert and sustain the general doctrine embraced in the former part of the charge of the

court below. None of them involved and none of them assume to decide the question we are considering. Among other cases to which we are cited, is that of *Worrall* v. *Munn,* 1 Selden, 229. In that case, the instrument was a written contract for the sale of lands. The vendor delivered the writing to the known agent of the vendee, to be by him delivered to the vendee, with the stipulation that it should not be operative unless it was approved by one Prall, another party. And it was held that the delivery was complete, and the condition of no effect. But Paigé, J., in delivering the opinion of the court, is careful to distinguish that case from .such a one as we now have before us, and, it seems to me, ·strongly intimates that if that case had been like this, his opinion would have coincided with ours. He says, "It was not handed to Henry Worrall [the agent] as an unexecuted and imperfect paper. There was no direction to him to retain it, and not to deliver it to the appellant until it was ratified by Prall. It was not left in his hands for a temporary purpose, and to be returned in case Prall did not assent to it; but it was delivered to Henry Worrall, as the agent of the appellant, as an executed and perfect instrument, on the condition that Prall subsequently assented to it. Such a delivery was, in law, an absolute delivery."

*Fairbanks* v. *Metcalf*, 8 Mass. 230, is a case which, though by no means analogous to this, yet, it seems to me, throws light on the question before us. There the question was as to the delivery of a deed of conveyance, admitted to be duly executed in all other respects. Metcalf, the grantor, handed the deed to Adams, the grantee, with this understanding and agreement between them, that Adams should transmit the deed to one Woodward, to be by him held as an escrow until .certain stipulated conditions were performed, and then it was to be finally delivered to Adams. This arrangement between the parties was carried out in good faith; and, on the perform-.ance of the condition, Woodward delivered the deed to Adams, the grantee.. It was insisted, in argument, that the act of the .grantor in handing over the deed to the grantee in the first ·instance, was, in itself and in law, a delivery of the deed,

though it was not so intended by the parties. But the court held that the grantee was but the agent of the grantor, for the purpose of transmitting the deed to its intended depositary; and that the deed took effect only from the time of its final delivery by him to the grantee. Now, if that case was correctly decided (and it has been followed in *Brown* v. *Reynolds*, 5 Sneed, 639), it proves that a grantor may hand over to a grantee a deed, perfectly executed in all respects except delivery, without that act being of necessity a delivery; that the grantee has legal capacity to receive the deed into his manual possession for other purposes than those of grabbing the instrument, and appropriating its subject matter; and. that the grantee may even be made the agent of the grantor for purposes connected with the disposition of the paper prior to the time when it is to be delivered in accordance with the intentions and agreement of the parties. And if these propositions are true of the grantee, *a fortiori*, are they true of his agent, between whom and his principal there is no personal identity, but only a legal identity, and that limited by the scope of that particular agency? True, it is said in that case, and is the established doctrine, that a grantee can not be made the depositary of an escrow, although he may be made the agent of the grantor, for the purpose of transmitting it to the depositary. The depositary of an escrow must be a third person. But the agent of a grantee *is* such third person. The incapacity of the grantee to become the depositary of an escrow, arises out of his personal identity; but there is no personal identity between the principal and agent; and surely there can be no legal identity between them beyond the legitimate purposes of the particular agency; and if he assume another agency, whose duties are in nowise inconsistent with those which arise out of the first, there is no incompatibility, and there can be no legal incapacity.

The last case which we shall notice, and the only one of which we are aware, in which the point in controversy has been directly decided, is that of *The Southern Life Insurance and Trust Company* v. *Cole*, 4 Florida Rep. 359. In that case a deed of mortgage had been delivered by the mort--

gagor to the known cashier of the Southern Life Insurance and Trust Company, which was the mortgagee, at its office, to be by him held as an escrow. And the court there held that "the delivery of a deed is a matter *in pais*, and though the possession of a deed by the grantee is *prima facie* evidence of delivery, yet the circumstances under which the grantee became so possessed, may be shown, even in a court of law, so as to avoid the effect of delivery. The delivery of a deed to the officer or servant of a corporation is delivery to the corporation itself, provided it is for the use and benefit of the corporation, and with intent to pass an absolute property and interest. But there is no such personal identity between a corporation and its officers as to prevent or preclude a delivery to the latter as an escrow, to take effect upon the performance of some condition."

The delivery of the release to Carrol, in the case before us, is claimed by the defendant in error to have been a delivery of it as an *escrow*. I confess I am unable to see any objection to giving it that name; and, to my mind, the state of fact which, under the charge of the court, the jury must have found, bring it clearly within the definition of an *escrow*. Chancellor Kent (4 Com. 454) thus defines *an escrow*. A deed "may be delivered to a stranger as an *escrow*, which means a conditional delivery to the stranger, to be kept by him until certain conditions be performed, and then to be delivered over to the grantee. Until the condition be performed, and the deed delivered over, the estate does not pass, but remains in the grantor. Generally an escrow takes effect from the second delivery, and is to be considered as the deed of the party from that time; but this general rule does not apply when justice requires a resort to fiction."

The phrase "a stranger," used in this definition, or the phrase "a third person," which, in many of the books, is used interchangably with it, it seems to me, can mean no more than this—a stranger to the deed, as not being a party to it; or at most, this—a person so free from any personal or legal identity with the parties to the instrument, as to leave him free to discharge his duty, as a depositary, to both

parties, without involving a breach of duty to either. And I believe that no case can be found, no opinion of any jurist can be cited, to the effect that the agent of one party is in-capacited from becoming the depositary of an escrow; and if we were to decide that such incapacity existed, we would originate a distinction hitherto unknown to the books.

Judgment affirmed.

SUTLIFF, C.J., and PECK and SCOTT, JJ., concurred; GHOL-SON, J., dissented.