## MARTIN v. TAYLOR.

1. CONVEYANCE: *For benefit of creditors: Parol evidence to prove condition.*
   An insolvent debtor and his creditors, including several persons who had sued out attachments against him, signed an instrument unconditional in its terms, whereby his property was conveyed to a trustee and by which it was stipulated that the attachments should be discharged, and that the trustee should dispose of the property for the benefit of the creditors. After the execution of the instrument, the attaching creditors released the property, which, together with the instrument, was delivered to the trustee, who accepted the trust. HELD: That parol evidence is not admissible to show that one of the creditors signed the instrument under an oral agreement that he was not to be bound by it, except upon the condition that another should be substituted for the person named in the conveyance as trustee.

2. SAME: *Same: Title of trustee.*
   Such instrument having been signed and delivered to the trustee, together with the property it conveyed, the title to the property vested in him and his right thereto could not be impaired by the act of one of the creditors in causing his

name to be erased from the instrument, although such erasure was made without objection by the trustee, with the assent of some of the other creditors, and pursuant to a parol agreement made with some of the creditors, that the party whose name was erased should not be bound by the instrument except upon a condition not expressed therein.

3. SAME: *Same: Parol agreement as to: Fraud.*

An oral agreement between some of the creditors made before the execution of such instrument, to the effect that one of the trustees named therein should be removed and another person put in his place, was no part of the contract, and the failure to perform it does not constitute a fraud, and furnishes no ground on which a person thereby induced to sign the instrument may avoid it.

4. SAME: *Same: Estoppel.*

The parties to such instrument are concluded from attacking it on the ground that it was executed to defraud creditors.

APPEAL from *Woodruff* Circuit Court.

M. T. SANDERS, Judge.

*J. W. House,* for appellants.

1. Considered as an assignment it may be conceded that the instrument, under our statutes, would be void as to all creditors who did not join in the same. But as a mortgage it would not be fraudulent. *26 Iowa, 381; 8 N. H., 536; 13 id., 298; 99 Ind., 548; 21 N. Y., 131; 4 Comst., 211; 2 Keys, 125; 14 Fed. Rep., 160; 67 Tex., 315; ib., 100; 67 Iowa, 605; 34 N. W. Rep., 763; 66 Iowa, 237; 19 id., 479; 26 id., 381; 58 id., 589; 31 N. Y., 542; 47 Ind., 372; 49 Wisc., 486.*

2. But conceding it to be an assignment and, therefore, void as to those creditors who did not participate in it, the plaintiffs cannot recover. It was not fraudulent as to those who signed it or participated. A written contract cannot be contradicted by parol evidence. These plaintiffs signed the contract; they cannot be heard to say they signed it upon certain conditions, that is, that Martin's name was to be stricken out and Estes' inserted. *29 Ark., 544; 30 id., 417; ib., 186; 4 id., 179; 5 id., 651, 672; 9 id., 501; 13 id., 125; ib., 593; 15 id., 543; 16 id., 519; 20 id., 293.* When the plaintiffs signed the contract they accepted as a whole. They cannot now be heard to dispute or impeach it for fraud or otherwise. *71*

*Ala., 240; 41 id., 510; 30 id., 101 ; 7 Heisk., 612; ib., 617; 101 Mass., 193 ; 2 Am. St. Rep., 295 ; 5 id., 23 ; 67 Tex., 217 ; 7 Conn., 214.*

They are estopped from asserting that the assignment was fraudulent. *2 Herm. on Estop., sec. 1023; 27 N. Y., 310; 13 Wend., 243; 8 Ohio, 533; 31 La. Ann., 84; 7 Minn., 345; 2 Minn., 291; 18 B. Mon., 195; 46 Me., 490; 33 Ark., 465; 37 id., 47.*

Having made their election they must stand by it. *46 Conn., 394; 7 Greenl. (Me.), 70; 135 Mass., 172; 87 N. Y., 166; 46 N. Y., 354; 5 Met. (Mass.), 49; 5 Ala., 322; 17 Conn., 345.*

Plaintiffs will not be allowed to assume inconsistent positions, when in doing so they injure others. They signed the agreement; they induced the release of the property from attachments, and the property therefore went into the hands of the trustees; they cannot now attack the assignment. *48 Cal., 131; 100 Ill., 43; 33 Mich., 344; 51 Mo., 33; 105 Pa. St., 103; 114 Mass., 175; 116 id., 386; 128 id., 152; 53 Am. Dec., 194; 80 id., 163.*

*J. M. Moore,* for appellees.

1. The instrument was a general assignment for the benefit of creditors, and void on its face. *Richmond v. Mississippi Mills, 52 Ark.; 37 id., 150; 36 id., 406.*

2. Under the circumstances of this case no estoppel arises. See *30 Ark., 453.* An election under a mistaken impression will not be binding. *1 Lead. Cas. in Eq., 537; 2 Johns. Chy., 450; 33 Ark., 468.*

If one is imposed upon, or acted under the influence of misrepresentation or fraud, or through mistake, no estoppel can arise. *Bigelow on Estop., 450, 462; 44 N. Y., 402; 46 id., 6; 30 Con., 210; 38 Iowa, 25; 57 Mo., 478.*

It is always admissible to show by parol that a document was conditioned on an event that never occurred. *14 Fed.*

Rep., 222; 30 Minn., 313; 11 Vt., 449; 119 Mass., 386; 52 N. Y., 575; 4 Cranch., 219.

Parol evidence is admissible to show that the instrument is void, or never had any legal existence or binding force, either by reason of fraud or want of due execution. 1 Greenl. Ev., sec. 284; 2 Phil. Ev., 688; 26 Ark., 451.

To constitute an election, it is held that any decisive act done by a person with knowledge of his rights and of all the facts material to him, is binding. Bigelow Estop. (4th ed.), 648; 13 Wend., 443. There must be assent deliberately made with full knowledge of its effect.

Only those whom the representation or conduct is made to, or intended to influence, and who are prejudiced by it, may take advantage of the estoppel. Bigelow Est. (4th ed.), 576. The appellants, as assignees of the general creditors, cannot set up the estoppel. 30 Con., 224.

W. G. Weatherford, also for appellees.

BATTLE, J. In April, 1886, J. J. Cook & Bro., grocers and merchants in the Town of Augusta, became insolvent. Several of their creditors brought suits and sued out orders of attachment against them. The claims sued on amounted to about $22,000. The property of Cook & Bro. was seized under these orders of attachment. This brought about a general conference and concert of action upon the part of their creditors. Many of them had an informal meeting in Augusta, and afterwards, on April 30, 1886, held a meeting in the City of Memphis, when a contract or agreement was entered into by Cook & Bro., and their creditors, including all the creditors who had sued out orders of attachment and all others, except one or two to whom only small amounts were due. This contract was reduced to writing and signed by the parties. By it Cook & Bro. transferred, assigned and conveyed all their property of every kind and description to Branch Martin and Thomas E. Erwin, in trust for the benefit of all their creditors.

It was thereby agreed that Martin and Erwin, upon giving bond, were to take charge of all their property, including real estate, merchandise, notes, mortgages, book accounts, etc., that the attachments should be dismissed, and that payments should be made as follows, to wit: First, the expenses of the trust. Second, to Friedman Bros. Third, to Dillard & Coffin, $7000. Fourth, to Eckerly, Stone & Co., $1305. Fifth, the balance to all other creditors, including balance due to Dillard & Coffin, and Eckerly, Stone & Co., *pro rata*, and the balance, if any, to Cook & Bro. Friedman Bros. were preferred creditors to the full extent of their claim. Dillard & Coffin, and Eckerly, Stone & Co. were preferred only as to a part of their debts. These creditors were preferred because they were the first attaching creditors, and because, if they had enforced their attachments, all the assets of Cook & Bro. would have been exhausted, and nothing would have been left to pay other creditors. By this agreement a committee, consisting of John W. Dillard, L. C. Tyler and F. T. Ryan, creditors of Cook & Bro., were appointed. It was empowered to superintend and direct the execution of the trust, to regulate and direct the purchases and expenditures in connection with the same, and to fill vacancies in the trusteeship, if any occurred. Its action was to be subject to the approval or rejection of the creditors as a body, and consistent with the object and purposes of the trust. The trustees were empowered to continue the business of Cook & Bro.; and the subscribing creditors agreed to furnish them, through the committee, supplies to the amount of $2500, or such other sums as they might find necessary to advance to the customers of Cook & Bro., to enable them to make their crops, and thereby to pay what they owed, as well as for the supplies furnished. If the trust was not closed by the first of March, 1887, the trustees were directed to sell the assets remaining on hand, or enough thereof to satisfy the trust, at private or public sale, as they should think best. This contract was signed by W. F. Taylor & Co., the attaching credi-

tors, and by other creditors to the number of about thirty, and was delivered to the trustees. The attaching creditors then discharged the property from the attachments, and delivered it to Martin and Erwin. Afterwards W. F. Taylor & Co., the appellees, caused their signatures to be erased from the agreement, brought suit on their demand, and on the 19th day of August, 1886, obtained a judgment against Cook & Bro. for $645.12. They caused an execution to be issued on this judgment, and levied on one and a half lots and some corn, a part of the property of Cook & Bro., transferred and conveyed to Martin and Erwin, and caused the Sheriff to advertise the same to be sold to satisfy their judgment.. Before the day of sale Martin and Erwin, claiming the property, in order to suspend the sale, executed with J. H. Campbell, as surety, a bond to the plaintiffs in the execution, to the effect that, if it should be adjudged that the property levied on, or any part of it, was subject to the execution, they would pay to the plaintiffs the value of the property so subject, and 10 per cent. thereon, not exceeding the amount due on the execution, and 10 per cent. thereon, and it was approved. Thereupon Taylor & Co. brought this action. They alleged in their complaint that the conveyance to Martin and Erwin and contract signed by Cook & Bro. and their creditors was and is illegal, fraudulent and void as to them; first, because it does not specify any time within which creditors are to accept its provisions; second, because the same provides that property therein conveyed is to be administered and closed up under the supervision of the creditors through a committee; third, because it provides that the business is to be carried on beyond the time allowed by the statute; fourth, because the same provides for the disposition of the assets at private sale; and fifth, because it provides that the surplus, if any, shall be paid to Cook & Bro.; and asked that the transfer and conveyance made by Cook & Bro. in the agreement with their creditors be set aside, and for judgment against Martin, Erwin, and Campbell on their bond,.

for the full amount due on their judgment. And defendants answered, and alleged substantially, the facts stated : that the erasure of plaintiffs' names was made without authority ; that the contract between Cook & Bro. and their creditors was made in good faith ; and that plaintiffs are estopped from disputing its validity. On a hearing, the court, sitting as a jury, found the facts as follows : "The plaintiffs declined to participate in the meeting of the creditors and debtors at which the agreement was entered into, and refused to sign it. Subsequently, however, they were induced by the so-called managing or supervising committee, upon certain conditions, to sign, and did sign the paper. They consented to do so upon the direct condition and representation that one Estes, at a salary of $75 a month, should be substituted in place of Martin, who was objectionable to plaintiffs, and was to get a salary of $200 a month. This condition was not complied with, and the chairman of said managers, on the part of the assenting creditors, on demand of plaintiffs, and without objection, immediately caused plaintiffs' signature to the agreement to be erased therefrom. Plaintiffs had no other connection with the parties to this agreement, were never called on to contribute any part of the money the creditors were to advance to carry out its provisions, and their withdrawal from it seems to have been acquiesced in, particularly by the defendants. The erasure was made when the instrument was in the hands of the defendants, Martin and Erwin, and they in possession of the property, but before they had proceeded to dispose of it, and before the instrument had been filed for record. Neither Martin nor Erwin offered any objection to erasing the signature when it was done, or at any time thereafter ; neither did Cook & Bro., who were on the ground ; nor the creditors, who had knowledge of it. With a knowledge of these facts, the defendants, Martin and Erwin, proceeded to dispose of the assets of Cook & Bro., according to the terms of the instrument ;" and among other things declared the law to

be as follows: "The instrument of writing by which defendants set up a claim to the property on which the plaintiffs' execution was levied is absolutely void as a deed of assignment for the benefit of creditors, nor is it valid as a deed of trust or mortgage security. If the instrument has any validity in law it is merely as an agreement in writing between debtor and creditors, by which the assets of the debtor were placed in the hands of a third party, to be disposed of under the supervision and direction of the creditors for their benefit. It did not affect the rights of any creditor who was not a party to the agreement," and "conferred upon the assignees, in this case, no right or title to the possession of the property;" and that "plaintiffs were not estopped from prosecuting their claim against Cook & Bro. to judgment, and levying executions on property in the possession of Martin and Erwin;" and that "parol evidence was admissible to explain the erasure;" and rendered judgment in favor of the plaintiffs against the defendants for the full amount of the execution, and the defendants appealed to this court.

The instrument in question is a conveyance by Cook & Bro. of their property to trustees for the benefit of creditors, and is also a contract between the subscribing parties thereto. Martin and Erwin were the trustees. It provides that the committee selected to supervise shall have the authority to fill any vacancy which might occur in the places of the trustees. When it was first presented to the appellees they refused to sign it. Finally, at the instance of one or two members of the committee, they signed it, with the understanding that T. H. Estes should be made trustee in the place of Martin. No change, however, was made in the instrument on account of their signature. Martin and Erwin still remained, as before, the trustees in the deed. The said members of the committee immediately ascertained that one of the creditors would not consent to the removal of Martin, and so informed appellees. They at once demanded the erasure of their names, and the

members of the committee, at whose instance they signed, without delay caused it to be done. They now insist that they are in no manner affected by the instrument, and that the property in controversy was liable to be seized to satisfy their execution.

The first inquiry which presents itself for our consideration is, did the instrument in question go into operation as to all who signed it? Appellees say that they signed it on condition that Estes should be made a trustee in the place of Martin; but there is no evidence to show that it was not to be delivered until the condition was performed. On the contrary, they wrote to a member of the firm of Cook & Bro. that they had signed it "upon condition that Mr. Martin goes over and receives the property under the instrument of writing, and turns it over to Mr. Estes." After it was signed the creditors discharged the property thereby conveyed from the attachments, and both the instrument and the property were delivered to Martin and Erwin. They accepted the trust, and proceeded to comply with its terms. All the parties to the instrument, it appears, understood that it was to take effect and become operative as a conveyance in trust when it was signed by them and delivered to Martin and Erwin. Nothing is said in it as to its taking effect upon the happening of a future contingency. It purports to be a full and complete conveyance and contract. Upon delivery to the trustees it became obligatory, and went into immediate operation as to all who had signed it. To permit any of the parties to show by parol evidence that it was conditional, would be to allow them to thereby vary or add to the terms of a written contract, and to violate a fundamental rule of evidence. The evidence relied on by appellees to show that it was conditional as to them was a parol agreement between them and two of the supervisory committee, that Estes should made a trustee in place of Martin, and was clearly inadmissible. · *Scott v. State Bank, 9 Ark., 36; Chandler v. Chandler, 21 Ark., 98; Ward v. Leidis, 4 Pick., 520; Cocks:*

*1. CONVEYANCE: For benefit of creditors: Parol evidence.*

Martin v. Taylor.

*v. Barker, 49 N. Y., 110; Lawton v. Sager, 11 Barb., 349; Mossman v. Holcher, 49 Mo., 87; Jones v. Shaw, 67 Mo., 667; Cincinnati, etc., R. Co. v. Stiff, 13 Ohio St., 235; Dawson v. Hull, 2 Mich., 390.*

2. SAME:
Same. Ti-
tle of trus-
tee.

The next inquiry is, did the erasure of the names of the appellees affect the rights of the other subscribing creditors and the trustees to the property in controversy ? It has been held by this court that the destruction of a title deed by a grantee does not divest him of the title to the land thereby conveyed ; and it is well settled that the alteration of such a deed does not affect the title. Mr. Greenleaf, in his work on evidence, says : " If the grantee of land alters or destroys his title deed, yet his title to the land is not gone. It passed to him by the deed ; the deed has performed its office as an instrument of conveyance, and its continued existence is not necessary to the continuance of title in the grantee ; but the estate remains in him until it has passed to another by some mode of conveyance recognzied by the law. The same principle applies to contracts executed in regard to the acts done under them." What is said of land is equally true of personal property. When the title to it passes it cannot be divested, except in some mode of transfer recognized by the law. *1 Greenleaf on Evidence (14th ed.), sec. 568; Strawn v. Norris, 21 Ark., 80; Talliferro v. Patton, 34 Ark., 503; Cunningham v. Williams, 42 Ark., 170; Davidson v. Cooper, 11 M. and W., 798; Chessman v. Whitesmore, 23 Pick., 231; Withers v. Atkinson, 1 Watts, 248; 2 Parsons on Contracts (5th ed.), 724; 2 Wharton on Contracts, sec. 704.*

In this case debtors and creditors were, doubtless, of the opinion that the instrument in question would be invalid as to non-assenting creditors. Not until all the creditors, except one or two to whom the debts owing were very small, had signed, were the instrument and the property delivered. After the execution of the instrument the attaching creditors, believing that they were as well secured thereby as by their attachments,

discharged the property from seizure and caused it to be delivered to the trustees. Nothing remained for Cook & Bro. and their subscribing creditors to do to complete the transfer and conveyance of the property when the erasure was made. The result was the property vested in Martin and Erwin in trust according to the terms of the instrument. Did the erasure impair their title? It is said that the court found that it "was made when the instrument was in the hands of Martin and Erwin, and they in possession of the property, but before they had proceeded to dispose of it, and before the instrument had been filed for record;" and that neither Martin, Erwin, Cook & Bro., nor any of the creditors, who had knowledge of it, made any objection to the erasure when it was made, or at any time thereafter. This may be true, but it is also true that Cook & Bro., the trustees, and the subscribing creditors, except appellees, never consented to surrender the property conveyed by the instrument, or any part of it, or to release any hold upon it, on account of the erasure. On the contrary Martin and Erwin still claimed and held it in trust and proceeded to dispose of it according to the terms of the instrument. The consequence is, the title to it was not divested by the erasure as to any of the parties who had signed. Surely appellees could not, so far as they were concerned, divest the trustees of title, or impair the same, by a stroke of the pen, against the will of the other parties. That is not a mode of transfer recognized by the law.

It is contended by appellees, that they were induced by the agreement, that Martin should be removed and Estes put in his place, to sign the instrument. Did the failure to carry this agreement into effect render the instrument fraudulent and void as to them? It was entered into before the execution of the instrument, rested wholly in parol, and formed no part of the written contract; was of no effect; and was binding on no one. It vested no right; its violation was no legal wrong. No one had a right to rely on it. Consequently there was no fraud in

3. SAME: Same: Parol agreement as to: Fraud.

the failure to carry it into execution.   On the contrary the evidence shows that it was entered into in good faith by two members of the committee selected to supervise the execution of the trust; and that immediately after appellees signed the instrument they ascertained that one of the subscribers would not consent to the removal of Martin, and reported that fact to the appellees; and that upon the demand of appellees, one or both of them, without authority, caused the erasure of their signatures to be made.   The failure to perform a promise made in good faith is no indication of fraud.   *Long v. Woodman, 58 Me., 49; Bigelow on Fraud, p. 483, sec. 4,* and the cases cited.

4. SAME: Same: Estoppel.    There is another reason why appellees cannot attack the instrument in question for fraud.   The parties to it had the right to make the agreement contained therein and bind themselves thereby.   Appellees were contracting parties.   One of the moving causes and considerations of the transfer and conveyances evidenced thereby was their written assent thereto. They have consequently concluded themselves from attacking it on the ground that it was executed to defraud creditors. *Rapeller v. Stewart, 27 N. Y., 310; Horn v. Henriquez, 13 Wend., 243.*

For the errors indicated the judgment of the Circuit Court is reversed, and this cause is remanded for a new trial.