Hoeeheimer, J.
The facts in this case are as follows:
On September 10, 1891, the plaintiff executed the following writing in favor of the defendant:
“Cincinnati, Ohio, September 10, 1891.
“I promise to deed to my brother, Frank D. Goodhue, after ■the death of our father, all the property I own on West Sixth street, formerly called Lower River road, except the property now leased to Ellen Freeman.
“(Signed)
Blanche Goodhue. -
*226 “The consideration of the above is one dollar and other considerations to me paid.
‘ ‘ (Signed) Blanche Goodhue. ’ ’
On the reverse side, in defendant’s handwriting, appears the following:
‘ ‘ This is to be of no force or effect provided I am not living.
“(Signed) Frank D. Goodhue.
“September 14, 1891.”
The property is fully described in the petition, and had been previously conveyed to plaintiff by the father of the parties. Plaintiff filed suit alleging said writing was a cloud on her title and she asked that said writing be declared a nullity, alleging want of consideration, fraud and breach of confidential relations; and she prays that her title be quieted.
Defendant denies confidental relations, undue influence and fraud, and claims that for many years prior to the conveyance of the property to plaintiff by her father it had always been understood aoid agreed by the family that the premises described in- the petition should, on the distribution that it was understood was ultimately to take place, become the property of the 'defendant. 'After distribution, defendant alleges he discovered that the property in controversy had been given to plaintiff. He at once expressed “his objections to her and to her having the same, basing his objections upon the family agreement, claiming that said agreement had been violated, and at the same time, gave her to understand that he would go to his father and make the same remonstrance and objections against said conveyance, and would induce, or try to induce him to either require plaintiff to give up this property to this defendant, or in some other way to'make good this loss.” That in consideration of his forbearance to do so and for one dollar, plaintiff executed said writing. He prays for specific performance.
In a second additional cross-petition defendant claims that, by virtue of a deed of said property, executed and delivered February 12, 1878, by the father to defendant, to be recorded on the father’s death, the legal title vested eo instanli in defendant, subject to the right of possession in the father for life; and that, *227 independent of said writing, defendant is entitled to said property, and asks that his title be quieted.
Plaintiff denies the delivery of this deed, and also pleads the statute of limitations, in reply.
Under the view entertained by me of this case, although the plaintiff charges her brother with fraud, it is not necessary for her to establish direct fraud. It is incumbent on defendant to-show that the transaction was fair and equitable, and that plaintiff, when she executed this paper, did so understandingly. I am fully satisfied, from the evidence, that the one dollar mentioned as a consideration was in fact never paid, nor was there any other consideration, for this alleged promise to convey real estate of concededly more or less value. No matter, then, for what purpose that paper was executed, whether, according to plaintiff, it was merely as a bit of possible evidence to be used by defendant, in the event of trouble over the will which, at his request, she had executed in his behalf at Rochbridge Alum Springs, devising this property to him; or whether, according to defendant, it was what it purports to be, an express promise to convey this real estate—it was gratuitous and founded on no consideration.
What rights, then, has the defendant acquired, by virtue of" the paper of September 10, 1891? Lord Cottenham long ago declared that whenever a person obtained, by voluntary donation, a benefit from another, .he was bound, if the transaction be questioned, to prove the transaction was righteous. And the rule is not confined to cases of attorney and client,'parent and child, but is general. (See Cooke v. Lamotte, 15 Beav., 234; Billage v. Southee, 9 Hare, 534; Haydock v. Haydock, 34 N. J. Eq., 570, 574.) So that, notwithstanding the claim of the defendant that no confidential relations. existed, because the relationship was merely that of brother and sister—a relationship not included in those special -instances of confidential relations usually' cited, namely, guardian and ward, trustee and cestui que trust, solicitor and client, parent and child—still Lord Cottenham considered that the rule extended to every ease where a person obtained influence' over another. The confidential rela *228 tions being merely one of fact, must be established by a preponderance of the evidence in the particular case before the chancellor.
It is plain that plaintiff loved and trusted her brother implicitly. And it is also evident, that, through this love and trust, the scruples she manifested when requested to execute this paper (“She could not see the use of it”), were overcome, and her submission was easily effected. Her complete reliance and dependence on defendant, from the very inception of this transaction, at Rochbridge Alum Springs, down to its culmination, in the secrecy of the room at her home, together with all the attendant circumstances, point unerringly to the dominant and controlling position of an only and older brother, over a sister who had just come of age, and who had no experience in matters of the world.
What, then, is the rule to- he applied to a case presenting these features? In the case already adverted to, a nephew who was provided for by his aunt’s will, procured a post-obit bond from her. It was set aside on the ground that he had not proved that she knew the effect of the bond was to make the will irrevocable (Cooke v. Lamotte, 15 Beav., 231). In that case it was said:
“The court will not permit the transaction to stand, if the defendant received the advantage through influence he had over the plaintiff, unless he can show the transaction was a righteous one. ”
In a case involving a transaction between an attorney and client, Lord Eldon held that he who bargains in matters of advantage with a person placing confidence in him, is bound to show that a reasonable use has been made of that confidence, and he takes upon himself' the whole proof that the thing was righteous (Gibson v. Jeyes, 6 Ves. Jr., 266). Indeed, so watchful is equity, in cases of donation, that the application of the rule is not even limited to cases involving confidential relations; and it is held that the relation is merely an incident to be considered with the other circumstances in the case. It may be regarded-as an established rule in equity that where a person *229 gains an important advantage over another by receiving a voluntary conveyance, or where the transaction indicates palpable improvidence on the part of the grantor, the person securing the benefit will be required to prove it was consistent, with fair dealing; and in the absence of such evidence, it will be set aside (Beach, Trusts and Trustees, Par. 145, and eases cited). Such being the ease, as announced in the beginning of this opinion, the burden is on the defendant to prove these things.
A'-brief discussion of but one or two phases of the evidence, we think, will suffice.
Defendant claims the transaction was fair and equitable, because, for a period of nearly thirteen years prior to the time of the execution of this paper, his father had intended to distribute his property among his children, and to give the Lower River road property, which included that in controversy, to defendant; that the giving of this property to plaintiff ivas a departure from the understood family agreement, and that, upon his protesting to plaintiff to that effect, she agreed to reliquish the property.
There is no doubt that the father of the parties had many times manifested intention of giving this property to defendant, by making wills and otherwise. But, certainly he had the right to- change his mind;. and that he did so, is evident. The very fact that he conveyed to his daughter shows most completely his change of purpose, and thus completely extinguished any basis of expectation on the part of the son. And it were manifestly unsafe to conjecture that the father intended doing anything different from that which he has deliberately and legally performed, and it would be unsafe to conjecture that Ke gave his daughter deeds to the. property, when, in fact, he had never intended to. There was no charge of fraud or collusion against plaintiff in receiving this deed, and it is very significant that defendant made no complaint to his father, who at this time though of advanced years, was active and attending to- his business affairs.
Now, * if the defendant induced plaintiff to give him this property, on the ground that the father gave it to her in vio *230 lation of a family agreement, she was unduly influenced to part with this property. First, because the proof fails to sustain the assertion that there existed at the time a family agreement: second, even if there was one, it implied no legal obligation on plaintiff’s part. Manifestly, then, she was misinformed. And considering the relations existing between these parties at that time, we think the influence thus used was fatal.
The language of Sir Samuel Romilley, in his celebrated reply in Huguenin v. Baseley, 14 Ves. Jr., 273, may be adopted as .expressing the view equity takes of a situation such as this. Speaking in regard to immoderate gifts, bearing no proportion to the circumstances of the giver, where the reason given is not true, and the giver a weak person liable to be imposed upon, a court of equity, if it sees any undue means have been used, or if it sees the least speck of imposition at the bottom,'ought to interpose. In Sears v. Shafer, 1 Barb., 408, the court adopts these views, and adds that which is also pertinent: That the court will interpose if the donor is in such a situation with respect to the donee as may naturally give the latter an undue influence over the former, if there be the least scintilla of fraud. See also, authorities cited, supra.
It was also incumbent upon the defendant to prove that plaintiff acted knowingly. From what has already been said, even assuming the fact to be as defendant claims, she did not act knowingly. But, in addition plaintiff claims that defendant represented the property was unimproved and would be a burden to 'her. This the defendant denies. Independently of this claim of plaintiff, however, it was incumbent upon the defendant to show affirmatively that he acquainted her with the exact conditions of this property. She never saw the property; and he kneyv or ought to have known this fact. On the contrary, he was very familiar with it. His, therefore, was the superior knowledge, and yet, instead of offering satisfactory and positive evidence on this point, the defendant says, on direct examination: “I do not remember stating there were no improvements upon it.” “I do not remember of saying the property would be a burden to her after father’s death.” (Page 4, record tes *231 timony of defendant.) “I may have said, the property was in bad repair.” Now, if it were conceded that there was no suggestio falsi, there must be no suppressio■ veri; and we think it is fairly deducible from such evidence as the defendant himself offers, that he did not fully acquaint plaintiff with the status of the property.
Under the circumstances, was the transaction consistent with fair dealing? We think not. By this paper, plaintiff evidently promised to give defendant real estate of some value. Was it her intention to be liberal? This was not a case where the recipient needed the aid of the plaintiff; she did not offer to give him this property of her own volition. The fact of the matter is, that the donee (defendant), was the active party. The plaintiff was entirely passive. The. defendant was the one who urged upon the plaintiff the execution of this paper.
.-Certainly she had not evinced any intention, prior to that time, to make any gift to the defendant. If it was a gift it was immoderate and disproportionate to her means. Now, it may be admitted that a sister may give her property to her brother, even to the extent of making herself altogether dependent upon him for support. Equity never opposes gifts merely becnuse they are immoderate. Stat pro ratione voluntas. But in such ease there must be an intention to be liberal; and liberality imports the absence of influence. See Billage v. Southee, supra. Such is not the case at bar.
With regard to the alleged expenditures claimed to have been made by defendant, and for which he claims he has not been reimbursed; if they were made, they were made by defendant on the faith of a contract made in 1898, and we therefore do not' feel called upon to determine any question with regard to them in this case.
Unless there was-a delivery of the deed of February 12, 1878, the defendant has no rights under it.
Thp evidence and the circumstances satisfy me, that George W. Goodhue, as a fact, never delivered this deed to defendant; and even if it were conceded that he gave the deed of this property to this defendant, as defendant claims, it was even then, *232 not a delivery of the deed as such, nor did the defendant accept it as such; so, that it can not be said, that merely because grantor handed the deed to the defendant, grantee, that title vested in defendant eo insianii, shorn of all conditions. If the deed was given to defendant at all, it was given merely for the purpose of transmitting it to the recorder on the death of the grantor. Possession by the defendant of this deed, was not conclusive that the actual delivery had taken place. Delivery is always an important question of fact to be solved in the light of the surrounding circumstances. The circumstances- and the conduct and acts of both grantor -and defendant indicate clearly that grantor never intended to part with -his right of control of the deed or the property, and the acts of both at this time and subsequently are utterly inconsistent with any other theory. The fact that the grantor had not parted with his right of control is clearly manifested “just as if he had so expressly-declared” (Mitchell v. Ryan, 3 Ohio St., 377, 382) by his many acts of dominion as well as by his express declaration that he had control.
In the case of Williams v. Schatz, 42 Ohio St., 47, the grantor gaije a deed to “B,” and he s-aid: “Take this deed and keep it. If I get well I will call for it. If I don’t give it to Billy.” The grantor died, and B handed the deed to the grantee, who caused it to be recorded. It was held that there was no delivery, and that B was the agent of the grantor. In the case at bar, the defendant himself drew this deed as well as others for his father, whose adviser and lawyer he was, it seems. In the light of the relation -existing and under all the circumstances and the evidence, he was acting simply as an agent of his father, who he claimed said, “take this deed, hold it, when I die give it to the recorder.” The death of the grantor would have revoked this authority; for real estate after death can be disposed of by will only, and not by deed. It made n-o difference if the deed was handed to the grantee himself, to constitute a good legal delivery something -more is required than simply handing over to the grantee a deed perfectly executed. As was said by our Supreme Court:
Wm. L. Dickson, for plaintiff.
Edivard Colston, contra.
“It proves that a grantor may hand over to a grantee a deed, perfectly executed in all respects except delivery, without that act being of necessity a delivery; that the grantee has a legal capacity to receive the deed into his manual possession for other purposes than those of grabbing the instrument, and appropriating its subject-matter; and that the grantee may even be made the agent of the grantor for purposes connected with the disposition of the paper prior to the time when it is to be delivered in accordance with the intentions and agreement of the parties. * * * True, it is said in that case, and is the established docA trine, that a grantee can not be made the depositary of an escrow, although he may be made the agent of the grantor, for the purpose of transmitting it to the depositary” (Cin., W. & Z. Ry. v. Biff, 13 Ohio St., 235-253).
AsT have said, the grantor must part with the right of control and the right of recall of the deed (3 Washburn, Real Estate, 254). But in this case he did neither. The fact that there was no absolute delivery of the deed,, is not only indicated as already stated, but is further reinforced by my finding this very deed, eight years after its alleged delivery to the defendant, in the grantor’s possession, a very pregnant circumstance that the supposed delivery of this deed was not absolute. (Thurman, J., in Mitchell v. Ryan, 3 Ohio St., 377.) And the possession of this deed by the grantor is entirely unexplained by the alleged grantee. There having -been no delivery of the deed of February 12, 1878, as such, the defendant’s contention must fail.
The plaintiff may take a decree as prayed for with costs.