*In re* PAIGE & SEXSMITH LUMBER COMPANY.

September 25, 1883.

**General Assignment for Creditors, made in another State.**—A general assignment for the benefit of creditors, made in another state, and valid by its laws, will be recognized in this state as valid, and as effectually transferring personal property, wherever the same may be situated.

**Same—Effect of Gen. St. 1878, c. 41.**—The statute (Gen. St. 1878, c. 41,) which declares void assignments not made to residents of this state, and such as are not filed as prescribed, was intended to apply only to assignments made within this state.  It does not change the unwritten law relative to the validity of foreign assignments.

*Certiorari.*  The writ was issued at the instance of a resident creditor of the Paige & Sexsmith Lumber Co., to review an order of the district court for St. Louis county, denying the petitioner's motion that the company's assignee be required to add to the inventory filed in that court a large amount of personal property, specified in the motion papers, and to increase his bond as assignee in proportion to the value of such personal property.

*Setzer & Smith* and *J. J. Egan,* for petitioner.

*J. D. Ensign,* for the assignee.

DICKINSON, J.  The Paige-Sexsmith Lumber Company was an association having its principal place of business in the state of Wisconsin.  It assumed to be a corporation organized under the laws of that state, and was doing business as a corporation.  It is claimed by the relator that the association was not legally incorporated. Two of the four members comprising the association resided in Wisconsin, the other two in Minnesota.  The principal place of business was in Wisconsin.  The company owned a large amount of real and personal property in both states.  In April, 1883, the company being in embarrassed circumstances, general assignments were made, in Wisconsin, of its property, to certain residents of that state, in trust for the benefit of its creditors.  These assignments were executed, both by the corporation as such and by all the individual members composing it.  The assignments were valid by the laws of Wisconsin; they were not, however, filed in this state.  The actual good faith of the parties is not questioned.  Subsequently, assignments were made in this state, by the corporation and by its members, of all its property, to a resident of this state.

The question to be considered is as to whether the assignments in Wisconsin are to be regarded as having transferred to the assignees therein named the personal property situated in this state.  The controversy is as to whether the assignee under the subsequent Minnesota assignment should be required to give bonds in an amount measured with regard to the value of such personal property.

A transfer of property effected only by the operation of the insolvent law of a state will not be recognized in another state as being effectual as to property in the latter state, and as against the just claims of its own citizens.  The foreign law, in such a case, is accorded no extraterritorial power to divest or transfer property.  *Hoyt* v. *Thompson,* 5 N. Y. 320, 352; *Kelly* v. *Crapo,* 45 N. Y. 86; *Caskie* v. *Webster,* 2 Wall. Jr. 131; Burrill on Assignments, (4th Ed.) § 303. But it is well established as a general rule that a voluntary conveyance of personal property, valid by the law of the place where it is made, passes the title wherever the property may be situated, and

that such transfers, upon principles of comity, will be recognized as effectual in other states, when not opposed to public policy or repugnant to their law. This principle is applicable in the case of voluntary assignments for the benefit of creditors. *Ockerman* v. *Cross*, 54 N. Y. 29; *Hanford* v. *Paine*, 32 Vt. 442; *Frazier* v. *Fredericks*, 24 N. J. Law, 162.

This is admitted by the relator to be the law, but it is claimed that the Wisconsin assignment is opposed to the express requirements of our statute, and, by the very terms of the law, is void for non-compliance with it. The statute, entitled "An act to protect the creditors of assignors, and to regulate the duties of assignees," (Gen. St. 1878, c. 41, §§ 23 *et seq.*,) provides that "every conveyance or assignment made by a debtor or debtors of the whole or any part of their estate, real or personal, in trust, to an assignee or assignees, for the benefit of creditors, shall be void, unless the assignee or assignees therein named are residents and freeholders of this state, * * * and until such conveyance or assignment be filed in the office of the clerk of the district court in and for the county wherein such debtor or debtors reside, or wherein the business in reference to which the same is made has been principally carried on." It further requires the debtor, at the time of making the assignment, or within 10 days thereafter, to file with the clerk of the court where the assignment is filed a statement showing certain facts. The assignees are required to execute and file with the clerk of the court, approved by the judge thereof, a bond running to the state of Minnesota, in an amount double the value of the estate assigned. The statute then prescribes the manner in which the further proceedings shall be conducted in the administration of the assigned estate, providing in relation to the proof of debts, the order of payment, the duties and powers of assignees, the final settlement and discharge of the assignees, and commmitting the control of the administration to the district court.

We are of the opinion that in this legislation there was had in view only assignments made within the jurisdiction of our law, and that the subject of foreign assignments was not contemplated, nor were they intended to be affected by this statute. There can be no doubt of the applicability of the statute to assignments made within this

state, but it is not apparent from the act that it was intended to so change the generally prevailing rule of law as to render invalid here assignments legally made abroad, but which do not conform to the provisions of our statute relating to assignments. When we consider the general doctrine that the validity of foreign assignments, as of foreign contracts, is not to be determined by our laws, common or statute, regulating generally the making of assignments or contracts, but by the law of the place where the same were made, it is to be presumed that if the legislature had intended this act to apply to the case of foreign assignments, making them invalid here, when, but for the act, they would have been deemed to be valid, that purpose would have been particularly expressed. Such an intention is not to be inferred from the general terms in which this act is framed.

We attach no importance in this case to the fact that two of the assignors were residents of this state. It is not claimed that the foreign assignments were not made in good faith, nor that they were executed abroad for the purpose of evading any of the requirements of our law. We do not consider whether, if the facts in this regard had been different, they would have affected the result.

Our conclusion is that our statute is inapplicable to the foreign assignments in question, and the action of the district judge is affirmed.

GILFILLAN, C. J., *dissenting.* I concur in the decision of this case, but do not agree to that part of the opinion which indicates that an assignment made (in good faith) in another state, according to the laws of that state, though not according to our law, is valid here even though the debtor resides and does business in this state. If the debtor resides, and the business in reference to which the assignment is made is carried on, in this state, so that the trust is to be executed here, I think the assignment must be made according to the requirements of our statute.