PUTNAM et al. v. TIMOTHY DRY-GOODS & CARPET CO. et al.

(Circuit Court, E. D. Tennessee. January 16, 1897.)

1. FEDERAL COURTS—JURISDICTIONAL AMOUNT—ASSIGNMENT FOR CREDITORS.
   In a suit, brought in behalf of all creditors, to administer a trust fund, the amount of the fund to be administered determines the question of jurisdiction.

2. SAME—PARTIES TO ACTION—CITIZENSHIP.
   A creditor may in some cases maintain an action to enforce execution of an assignment for the benefit of creditors without making the other creditors parties, either plaintiff or defendant, though their names set out in the assignment. And the court has jurisdiction although the effect would be to oust it of jurisdiction if they were made parties. Hotel Co. v. Wade, 97 U. S. 13, applied.

3. EQUITY JURISDICTION—ASSIGNMENT FOR CREDITORS.
   Any creditor secured by an assignment may maintain a bill for the purpose of enforcing due and proper execution of the trust.

4. SAME—REMOVAL OF TRUSTEE.
   The court should be cautious in removing an assignee for creditors upon the ground of misconduct; and where his conduct complained of proceeds from a misunderstanding of his duty or from mistake, and not from any dishonest, selfish, or improper motives, and the safety of the property is not imperiled, the court generally will not remove him.

This was a suit in equity, brought by Putnam, Hooker & Co. and others against Timothy Dry-Goods & Carpet Company and others, to enforce the execution of an assignment for creditors executed by the Timothy Dry-Goods & Carpet Company to E. A. Metz, in which there was a motion to remove the trustee.

Pritchard & Sizer and Andrews & Andrews, for plaintiffs.
R. P. Woodard, for defendants.

CLARK, District Judge. The bill is brought in this case primarily for the purpose of enforcing due and proper execution of the trust assignment. It is well settled, of course, that any creditor secured by the assignment, and a beneficiary thereunder, may maintain such a bill. The first question which presents itself is that of jurisdiction

of the case. This question relates to federal as distinguished from state jurisdiction, and not to equitable as distinguished from legal jurisdiction. The objection to jurisdiction of this court is based upon two grounds, namely, the want of jurisdictional amount, and the lack of proper citizenship. As the bill is brought to administer a trust fund, and on behalf of all creditors, I think the cases fully establish the proposition that the fund to be administered determines the question of jurisdiction; and, besides, one of these complainants claims an amount which exceeds the jurisdictional limit. The question which gave me most trouble on first reading the bill was that of citizenship, and this difficulty did not grow out of the case, so far as the parties actually named on the record are concerned. The court was disposed to think that the plaintiff could not maintain the bill without making the other creditors parties, either plaintiff or defendant, so far as their names were actually known to him; and these names a copy of the assignment, which is made an exhibit to the bill, distinctly sets forth. The difficulty which thus suggested itself seems to be met by the principle of the case of Hotel Co. v. Wade, 97 U. S. 13, and other cases, both state and federal, which need not be here referred to. I am satisfied that, as the case is presented, the court has jurisdiction.

It remains then to determine whether or not a case for equitable relief is presented under the bill. It may be of service at this point to restate certain propositions which are now fully established and no longer open to question. Speaking broadly, the whole subject of trust, including trust assignments for the benefit of creditors, and the proper execution of such trust, with directions and instructions to trustees in regard to their duties, is an original and familiar head of equity jurisdiction. It has been repeatedly decided that either the assignee, or a creditor under the assignment, may make application to a court of chancery either to restrain the assignee from acts which would constitute mismanagement or waste, and to have such orders and decrees as will cause a due and legal execution of the trust, or the assignee may himself, in case of doubt or difficulty, apply to the court for instructions and directions in the execution of his trust. Such bill may be maintained not only when the trust is not being properly executed, but whenever there is danger of a loss or waste to the trust fund. When such bill is brought by a creditor under the assignment, the rule only requires that it shall be brought against the assignee, and that it shall be brought on behalf of all other creditors who choose to come in on the usual terms. These and other propositions relating to the subject will be found fully stated and sustained by the following authorities: Weir v. Tannehill, 2 Yerg. 57; Shyer v. Lockhard, 2 Tenn. Ch. 365; Burrill, Assignm. § 419; 2 Perry, Trusts, §§ 595, 817; 1 Am. & Eng. Enc. Law; 2 Story, Eq. Jur. 1287.

I may first dispose of the motion to remove the present assignee, E. A. Metz. The grounds of objection to Mr. Metz are, so far as they are material to be now noticed: (1) That he declines to bring suit to collect certain alleged stock subscriptions due to the Timothy Dry-Goods Company; (2) that he has failed and refused to make a proper inventory of the stock of goods, in that he refused to mark the invoice

price of the goods, or sufficiently describe the lot and character of the different items of the stock; (3) that there is a debt of $5,000 purporting to be due George Metz, a brother of E. A. Metz, and secured by the assignment, and that $7,500 of stock in a real-estate and building association was transferred to E. A. Metz, as trustee for his brother, to secure this $5,000. The bill questions the validity of this debt of $5,000. This $5,000 is due by note, which appears to have been given by the corporation upon his retirement therefrom, and presumably for his stock therein; and the point is made that this is a transaction that the corporation could not make,—in a word, that it was ultra vires. In regard to the failure of the assignee, Metz, to institute suit for any supposed stock subscription, it is only necessary to say I am clearly of the opinion that upon proper legal advice he should do so, as he could maintain no such suit in the present condition of things. A question of that kind could not be raised except in a bill to wind up the corporation. The failure of Metz to furnish a fuller inventory may be due to overcaution on his part, in the apprehension that the goods might be put at a figure higher than could be realized from them in a sale, and a question of liability for the difference be made. The force of this fact of failure to make satisfactory invoice is much weakened by other circumstances in the case. It appears, for example, that a representative of the creditors, as well as the creditors' solicitors, has applied to the assignee, and has been allowed free access to the invoice books of the company, and free personal examination of the goods, and that a second inventory was made out at the instance of a representative of creditors, to which it is certain no serious objection was made, except the failure to state the invoice price of the goods; and although it does appear that the cost-price tag, or slip of paper, which is usually found on packages of goods, has been taken from many of them, Mr. Metz denies that it was with his knowledge and consent, and there is no proof that it was. It must be stated also that, beyond this objection to the invoice, it is not alleged or intimated that Mr. Metz has done anything unfair or partial in the matter. He is shown to be a young man of high character, good business qualifications, and has given a bond for the discharge of his duty, the amount and solvency of which are not put in question. It is a somewhat serious matter to remove an assignee upon the ground of misconduct, and the court should certainly be cautious in doing so, except upon satisfactory grounds. A trust position like this is one of the most responsible and delicate ones known in business relations, and misconduct in his office, or a breach of his trust duty, would operate as a most serious injury to Mr. Metz, who is now a young man. I do not think there is any ground sufficient to sustain the motion to remove. The most serious objection, in my opinion, to continuing Mr. Metz in office, is the antagonistic relation which he now occupies towards the creditors and towards his brother in relation to the disputed debt of $5,000. And in regard to this it must be observed that it is not charged that the debt is fictitious or fraudulent in fact. The attack made upon the debt is, as before stated, that it is one beyond the scope and power of the corporation to create, and that it is for that reason legally in-

valid.    The distinction between a debt which is invalid by reason of a want of power in the corporation to create the debt, and a pretend-ed or fictitious debt, which has no existence in fact, and for which the corporation received no consideration, is a distinction easily un-derstood.    It is not at all difficult to suppose that Mr. Metz did not know the facts connected with this transaction, or, what is more probable, that both himself and the officers of the company supposed that they might buy out George Metz's interest in the company, and give the company's note therefor, just as an individual might do. The fact that very intelligent business men, in control of corporations, do not observe this distinction in the power between a corporation and a natural person, is a thing of almost daily occurrence.    There is no charge that Mr. Metz is not thoroughly competent to execute the trust; no charge that in doing so, up to this date, he has been guilty of any mismanagement, waste, or extravagance.    There is, in short, no charge which connects him with anything which could be con-sidered prejudicial to the creditors secured by the assignment.    Up-on this subject of directions to, and the control or removal of, assignees and trustees, by a court of chancery, the result of the ad-judged cases is well stated by Mr. Perry in his work on Trusts, as follows:

"(817) The cestuis que trustent may bring a bill or petition for removal, and the court may remove the trustees from office, and appoint others in their place, when there has been bad conduct, or the trustee is unfit for his office, or to prevent a threatened breach of trust, or any danger to the trust fund; but if the conduct of the trustee proceeds from a misunderstanding of his duty, or from mistake or from long-continued practice by himself and other trustee, and not from any dishonest, selfish, or improper motives, and the safety of the property is not imperiled, the court generally will not remove him.    (818) Proceedings for the removal of trustees and the appointment of others require some little time, as trustees have the right to file answers to the charges against them, and to a regular and full hearing; and, as the cestuis que trustent are entitled to have the fund properly protected, and managed in the meantime, the court may appoint receivers.    Thus, if it can be shown that the trustees have been guilty of misconduct, waste, or an improper disposi-tion of the estate; or that they have an undue leaning towards one of two conflicting interests; or that the fund is in danger from their insolvency or bankruptcy; or that one of the trustees has been guilty of misconduct, and the other trustees desire a receiver; or that they are incapacitated from acting; or that they are of bad character, drunken habits, and great poverty; or that the trustees are out of the jurisdiction; or that they so disagree among themselves that the estate cannot be properly administered,—receivers will be appointed; and so where the trustee was a married woman, and her husband was out of the jurisdiction.    In all cases the court will appoint a receiver if the trustees and cestuis que trust agree or concur in the appointment.    But the court will require security.    (819) The court will not appoint a receiver, and take the administration out of the hands of the trustees, upon slight grounds.    It is not a sufficient ground, of itself, for a receiver, that one trustee has disclaimed, another is inactive, and another has gone abroad, if there is still a trustee capable and willing to execute the trust; nor that the trustees are poor, if they are not insolvent; nor that trustees for sale have let the pur-chaser into possession before the purchase money is paid.    There must be good reason to fear that the property will not be forthcoming at the end of the litigation, or the court will not appoint a receiver." 2 Perry, Trusts, §§ 817–819.

It is to be borne in mind that the plaintiffs in this suit make no attack upon the validity of the assignment, but bring the bill to have

the trust executed; thereby affirming the validity of the assignment, and accepting the same. It is the duty of the court to so exercise its confessedly rightful jurisdiction over this subject as that the creditors will be fully protected in the due execution of the trust, and so, at the same time, as to avoid onerating the fund with any cost or expense not absolutely necessary to protect the just rights of creditors. As the cause must be retained to allow the question made on the $5,000 debt to George Metz to be litigated and determined, I have concluded to retain the case, in order that the trust may be executed by the assignee, in a general way, under the orders of the court, and so that, if just ground of complaint against the assignee should arise in the execution of his further duties, such application may hereafter be made to the court as the facts may be thought to require. Mr. Metz will be required not to pay or recognize the debt to George Metz until the question of its validity shall be determined in this case. He will proceed as heretofore to execute the trust assignment according to the directions and provisions of the trust deed, and will make and file in this court monthly reports of his action under the trust deed, showing his sales, expenses, and the proceeds realized. He will make no disposition of the property at private sale, except upon five days' notice to such representatives as creditors may designate for that purpose, which they are required to do within five days, and furnish the name of such representatives to the assignee. The assignee will continue to sell goods as directed in the trust assignment, according to the usual course of business during the six months, as heretofore; the intent of this direction being that if such assignee should deem it best to sell the goods otherwise than according to the usual course of business, by selling the goods in lots, or other parts of the property, the creditors shall have notice of such disposition five days before an actual sale. The trustee is required within ten days to furnish and file in the court an inventory showing the original cost price of the goods embraced in the assignment, so far as this can be done from the books of the company or otherwise, and also such brief description of the kind or quality of goods as may be reasonably furnished. In case there are any goods, the cost price of which cannot be ascertained, the assignee will so state, and point out the goods of this kind, and will, upon application, allow the representatives of the creditors to examine the quality and character of such goods in the presence of the assignee, in order that the cost price may be agreed upon, and, in case it cannot, in order that a representative of the creditors may himself determine the cost value or price of the goods. The assignee will make affidavit to the inventory hereby required, in which affidavit he shall state that he is unable to give the cost price of goods where the same is not given in the inventory. To avoid misapprehension, I wish to repeat that the assignee will proceed with the discharge of his duties distinctly as provided by the trust deed; the only provision herein requiring that, in case certain sales are made under the power of the trust deed, the creditors shall have due notice thereof. It need not be added, of course, that the motion to remove the assignee is overruled.