MEMPHIS SAV. BANK et al. v. HOUCHENS.

(Circuit Court of Appeals, Eighth Circuit.   March 10, 1902.)

No. 1,430.

1. FEDERAL COURTS—JURISDICTION—DISTRICT IN WHICH SUIT IS BROUGHT.
    The inhibition of the federal judiciary act of August 13, 1888 (25 Stat. 433, c. 866), against the bringing of a suit in any district other than one of which either the plaintiff or defendant is an inhabitant, may be waived by a defendant, and is so waived by his removal into a federal court of a suit brought in a court of a state of which neither of the parties is an inhabitant.

2. ASSIGNMENT FOR BENEFIT OF CREDITORS—VALIDITY IN ANOTHER STATE—REAL ESTATE.
    A state statute regulating general assignments is not applicable to an assignment executed outside of the state merely because it conveys property within the state, and where such an assignment is in a form valid at the common law and by the law of the place where made and where the parties reside, and also in the form prescribed for the conveyance of real estate under the laws of the state, it will be recognized and enforced in such state, under the rule of comity as to real estate there situated, although it does not conform to the requirements of the local law, when no rights of any resident are prejudiced thereby, but the controversy is wholly between nonresident creditors of the assignor, some of whom are attempting to secure a preference by attachment.[1]

3. SAME—TRUST—ESTOPPEL.
    A general assignment made by a partnership for the benefit of its creditors conveyed lands situated in another state.   Subsequently the firm made a proposition for a composition, by which each creditor was to receive notes to be secured by the assigned property, which was to be held by the assignee as trustee for that purpose.   Held, that creditors who signed the composition agreement, or who subsequently accepted the notes executed thereunder without objection, were estopped from denying that the lands conveyed by the assignment were held in trust for the common benefit of all creditors, or from attacking the validity of the trustee's title on the ground that the assignment did not conform to the laws of the state where the land was situated.

4. EQUITY JURISDICTION—SUIT TO ADMINISTER TRUST.
    A court of equity has jurisdiction of a bill to administer a trust, filed by a beneficiary in behalf of himself and all other beneficiaries, where facts are alleged which show that the trustee, although without fault of his own, has been prevented from executing the trust in the manner contemplated, and that there are obstacles in the way of its proper and economical administration which the court can remove.

5. REMOVAL OF CAUSES—DIVERSITY OF CITIZENSHIP—CONTROVERSY.
    Where a bill filed in a state court alleges facts which would authorize a court of equity to grant relief, the right to remove the cause, when the requisite diversity of citizenship exists, does not depend upon whether the defendants are actually controverting or disputing the right to such relief.

6. EQUITY JURISDICTION—SUIT TO ADMINISTER TRUST—PROPERTY OUTSIDE OF DISTRICT.
    In a suit to administer a trust a court of equity acts in personam; and where it has acquired full jurisdiction of the trustee and all other necessary parties, it may direct the administration of the trust, although a part of the property consists of land not within its territorial jurisdiction.

---

[1] See Assignments for Benefit of Creditors, vol. 4, Cent. Dig. § 80 [g, h, i, j], ¶ 82.

**7. FEDERAL COURTS—JURISDICTION ON REMOVAL.**

Where a state court in which a bill was filed to administer a trust in lands had jurisdiction to grant the relief as to all of such lands, although some of them were situated in each of the two divisions of the federal district, the federal court, into which the suit was properly removed, has equal jurisdiction as to the lands situated in the other division of the district.

**8. SAME—ANCILLARY JURISDICTION—PROCEEDING TO PREVENT INTERFERENCE WITH TRUST PROPERTY.**

Where a federal court has acquired jurisdiction of the cause and of all necessary parties in a suit to administer a trust, it may protect such jurisdiction by preventing interference with the trust property through attachments subsequently procured from a state court, whether it has at the time taken actual possession by its receiver or not, and it has ancillary jurisdiction of proceedings for that purpose against those attempting such interference, without regard to their citizenship.[2]

**9. SAME—JURISDICTION—EFFECT OF UNAUTHORIZED ACTS OF RECEIVER.**

After a federal court had acquired jurisdiction of a suit to administer a trust in lands which had been assigned by a debtor in trust to secure all his creditors, and had appointed a receiver for such lands, certain creditors instituted actions in a state court against the assignor, and obtained attachments, which were levied on some of such lands. The federal receiver, on his own motion, appeared in the attachment suits, and filed motions to quash the attachments, which were overruled on the ground that the levies, being upon lands, in no way affected the receiver's possession, while the granting of the motion would prevent the plaintiffs from perfecting their claims under the attachments. Held, that such action of the receiver or of the court did not defeat the prior jurisdiction of the federal court over the lands or the rights of the complainant therein under the trust.

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

On or about March 1, 1892, Nellie Houchens, the appellee, exhibited a bill of complaint against Thomas H. Allen, Thomas H. Allen, Jr., Harry Allen, and Richard H. Allen, Jr., partners under the firm name of Thomas H. Allen & Co., and against Ellen H. Allen, wife of Thomas H. Allen, and against M. B. Trezevant, as assignee of the firm of Thomas H. Allen & Co., in the circuit court of Jefferson county, in the state of Arkansas. The bill contained the following allegations, in substance: That Thomas H. Allen, Thomas H. Allen, Jr., Harry Allen, and Richard H. Allen, Jr., all of whom were citizens of the state of Tennessee, had been copartners in business, and had been doing business at Memphis, Tenn., under the name of Thomas H. Allen & Co., and in the city of New York, under the name of Richard H. Allen & Co.; that on November 24, 1890, said firms, which were composed of the same persons, executed a deed of assignment to the defendant M. B. Trezevant, who was also a citizen of the state of Tennessee, whereby said firms conveyed to him, for the benefit of all their creditors, a large amount of real and personal property; that a part of the real property so conveyed consisted of several large plantations in the counties of Crittenden, Lee, Desha, Jefferson, Perry, Lincoln, Columbia, Nevada, Logan, Mississippi, and Ouachita, in the state of Arkansas; that, besides conveying said lands in the state of Arkansas by deed of assignment, as aforesaid, Thomas H. Allen and wife, in whom the legal title to said lands was vested, also conveyed them, in trust, on the same day to said Trezevant, such conveyance by separate deeds having been made for the purpose of rendering the transfer of the title to said lands to said Trezevant more effectual; that by other deeds, made by said Thomas H. Allen and wife on February 23, 1891, said lands located in the state of Arkansas were again

---

[2] Supplementary and ancillary proceedings and relief, see note to Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A. 195.

conveyed to said Trezevant, all of which deeds were duly recorded in the respective counties where the lands were situated, and contained a recital that they were executed for the purpose of securing the creditors of the firms of Thomas H. Allen & Co. and Richard H. Allen & Co., and that when the claims of said creditors were paid the trust should be discharged. The bill further averred, in substance, that Trezevant accepted the trust by signing the several conveyances aforesaid; that on December 20, 1890, said firms made a proposition to their creditors to pay their respective claims in full in four equal installments, which were to be evidenced by promissory notes made by the firms, maturing every six months for the period of two years, and bearing interest at the rate of 6 per cent. per annum, and that as security for the payment of said notes the deed of assignment executed in favor of Trezevant should remain in force, said firms reserving to themselves the power to sell said lands in the meantime through the trustee when it could be lawfully done; the proceeds of any such sales, however, to be applied on said notes. The complainant also averred that Thomas H. Allen & Co. was indebted to her in the sum of $6,556.35; that she accepted the aforesaid proposition, and received three notes of said firm, bearing date December 20, 1890, for the sum of $2,145.46 each, due, respectively, December 20, 1891, June 20, 1892, and December 20, 1892; that of said notes the one which fell due December 20, 1891, was unpaid; that the payment thereof was secured by the aforesaid conveyances; that the trustee had no funds on hand with which to pay the complainant; that a large portion of the land so held in trust consisted of plantation property, a large part of which was idle and unproductive; that the taxes on said property were a heavy burden, and that the trustee was without means to pay the same; that the firm of Thomas H. Allen & Co. and Trezevant, the trustee, had been greatly embarrassed by the low price obtained for cotton and by the financial depression that had come upon the country; that the improvements on the property held in trust were in danger of going to waste; that the value of the trust property would be thereby greatly impaired; that the indebtedness of the firm of Thomas H. Allen & Co., which was secured by the aforesaid conveyances, and which was held by creditors who had assented to the composition proposition aforesaid, amounted to $427,000; and that the holders of said indebtedness were very numerous, and that they were scattered throughout the country and resided in many different states. In view of the premises the complainant prayed, in behalf of herself and all the creditors of Thomas H. Allen & Co. who might elect to join in the proceeding, that the court would appoint a receiver to take charge of all of the aforesaid property and administer it for the benefit of the creditors of Thomas H. Allen & Co., and that during the pendency of the litigation, and until such time as the property was disposed of, it would make such orders for the preservation of the trust property as might be deemed necessary, and for all such further relief as was deemed proper.

The defendants to said bill appeared in the circuit court of Jefferson county on April 4, 1892, and obtained an order for the removal of said cause to the circuit court of the United States for the Western division of the Eastern district of Arkansas, which order of removal was based on the ground that the complainant, Nellie Houchens, was a citizen of Louisiana, and that all of the defendants were citizens of the state of Tennessee. The transcript of the record in the state court was filed in the federal circuit court on June 20, 1892, and on July 1, 1892, the latter court made an order appointing M. B. Trezevant receiver of all the Arkansas lands which had been conveyed to him, as aforesaid, in trust to secure the creditors of the firms of Thomas H. Allen & Co. and Richard H. Allen & Co. The receiver duly qualified by giving bond on July 6, 1892. The order of appointment authorized the receiver to sell the lands in controversy subject to the approval of the court, and until they were sold to rent the same and to pay the taxes thereon. On December 21, 1892, the receiver aforesaid filed a petition in the federal circuit court, wherein he represented that the Memphis Savings Bank of Memphis, Tenn., the City National Bank of Cairo, and the Phœnix Insurance Company of Memphis, three of the appellants, and one A. G. Mitchell, of Memphis, had severally commenced actions at law by

attachment in the circuit court of Crittenden county, Ark., against the firm of Thomas H. Allen & Co., and had severally sued out writs of attachment which they had caused to be levied on the lands of said firm theretofore conveyed to the receiver in trust, which were situated in Crittenden, Perry, and Jefferson counties, Ark.; that at the October term, 1892, of said court, judgments had been obtained in said several actions against Thomas H. Allen & Co.; and that an order for the sale of the attached lands had been entered, under which the respective sheriffs of said counties were about to proceed. In view of the premises the receiver prayed for an injunction to restrain the threatened sale, and such an injunction was accordingly granted on December 23, 1892. A similar order of injunction, restraining the sale under said judgments of other attached lands of said firm, which were situated in Lee and Faulkner counties, Ark., appears to have been obtained on January 4, 1894. A motion to dissolve the aforesaid injunctions as respects the lands situated in Lee, Jefferson, and Faulkner counties, so that the sale thereof might proceed, appears to have been made in behalf of the appellants in the federal court, which motion was denied on December 5, 1896. Thereafter, on February 10, 1897, the complainant below filed an amended bill of complaint in pursuance of leave theretofore obtained, by virtue of which amended bill the Memphis Savings Bank, the Phœnix Fire & Marine Insurance Company, the City National Bank of Cairo, Ill., and A. G. Mitchell were made parties to the proceeding. After setting forth the commencement of the several actions at law aforesaid in the circuit court of Crittenden county, Ark., said amended complaint contained allegations showing the dates on which the several writs of attachment therein had been received and levied. According to the averments of the bill and the proof offered in support thereof, it appears that none of said writs of attachment were received prior to July 2, 1892, and that none of said writs were actually levied prior to July 8, 1892. Some of the writs were not levied until August 20, 1892. It was further averred, in substance, in said amended bill, that notice of the removal of the cause from the state to the federal court on June 20, 1892, was served upon the defendants; that notice was likewise served upon them that the complainant would, on June 28, 1892, make application to the federal court for the appointment of a receiver to assume charge, control, and custody of the lands heretofore mentioned; that such a receiver had been duly appointed, who had qualified on July 6, 1892; that the lands of which he had thus been appointed receiver had been previously conveyed to him by the firm of Thomas H. Allen & Co., and by Thomas H. Allen and wife, in the manner heretofore described; that Thomas H. Allen & Co. had made a proposition to their creditors for the composition and settlement of their indebtedness in the manner heretofore stated; that said composition had been accepted by all, or nearly all, of the creditors of Thomas H. Allen & Co.; that the Memphis Savings Bank, the Phœnix Fire & Marine Insurance Company, and A. G. Mitchell, who were named as defendants in said amended bill, had severally signed said composition agreement; that the City National Bank of Cairo had likewise agreed to said composition, and on the maturity of its claim had accepted composition notes which were executed by Thomas H. Allen & Co. in compliance with the composition agreement; and that said composition agreement provided that the lands in controversy theretofore assigned and conveyed to Trezevant, as trustee, should remain vested in him as security for the payment of such notes as were executed in compliance with the provisions of the composition agreement. It was further averred in said amended complaint that the attaching creditors were claiming, as against the other creditors of Thomas H. Allen & Co., that the liens of their several attachments were superior to the liens of the other creditors of said firm; and that the several attachment suits, and the claims made thereunder, operated as a cloud upon the title of the receiver. In view of the premises the complainant prayed that the several attaching creditors might be restrained and enjoined from seeking to sell or dispose of the lands in controversy under the judgments which they had obtained in the circuit court of Crittenden county, and that it might be adjudged that they had acquired no right or interest by virtue of the attempted levy of the several

writs of attachment which was superior to the rights of the other creditors of Thomas H. Allen & Co. Thereafter, on May 3, 1897, the appellants above named, to wit, the Memphis Savings Bank, the Phœnix Fire & Marine Insurance Company, the City National Bank of Cairo, and C. W. Edmunds, another of the appellants who had succeeded to all the rights of A. G. Mitchell, filed a plea to the jurisdiction of the federal court as respects the matters alleged in the amended bill. By said plea it was averred, in substance, that the federal court had no jurisdiction of them, or either of them, for any purpose whatsoever, and that said court had no jurisdiction to enjoin said appellants, or either of them, with respect to the execution of the judgments which they had severally obtained in the circuit court of Crittenden county, Ark. Among the exhibits filed in support of the plea to the jurisdiction was an order made by the circuit court of Crittenden county, state of Arkansas, from which it appeared that prior to November 26, 1892, Trezevant, as receiver, had filed a motion in said court, asking that the levies of the several writs of attachment be quashed and discharged, and that the property levied upon be released to him as receiver, which motion had been overruled by the state court on November 26, 1892, for the reason, as stated in its order, that, inasmuch as the levies were made upon real estate, they in no wise affected the possession of the receiver.

The aforesaid plea to the jurisdiction was overruled by the federal circuit court on June 18, 1897, whereupon, the several appellants united in filing what is termed an answer and demurrer to the amended bill. The pleading so filed contained, first, a plea to the effect that Trezevant, the receiver, had submitted himself to the jurisdiction of the circuit court of Crittenden county, Ark., and was estopped by its judgment, and was not entitled to further question the propriety of the proceedings in that court because he had appeared as receiver in said court, as heretofore explained, and had set forth his title to the attached property, and had moved that the attachments be quashed. They next pleaded that the circuit court of Crittenden county had acquired full jurisdiction of the attachment suits against Thomas H. Allen & Co., and of the lands levied on therein, before the federal court had acquired any jurisdiction of the lands, and before it had appointed a receiver thereof. They further alleged, in substance, that the assignment executed by the firm of Thomas H. Allen & Co. on November 24, 1890, and the deeds executed by Thomas H. Allen and wife for the purpose of effectually vesting the title of the Arkansas lands in Trezevant in trust for the benefit of the creditors of that firm, were void, under the laws of the state of Arkansas, and were insufficient to vest any title whatsoever in him, as against the claims of attaching creditors; that the proposition to compromise the debts of the firm which was made by Thomas H. Allen & Co. on December 20, 1890, had not been accepted by the appellants and by many other creditors of said firm; that it was necessary that all of such creditors should have accepted it to render it binding and effectual; and that said alleged composition agreement had in fact been abrogated and annulled. They also alleged, in substance, that when the suit at bar was commenced in the circuit court of Jefferson county, Ark., no one had denied the validity of the assignment which was executed by Thomas H. Allen & Co.; that no suit for the purpose of contesting the same had been begun; that no one had charged Trezevant, the trustee therein named, with a breach of trust, or with any derelictions of duty; that said action was brought on the equity side of said court, without any good or sufficient cause therefor; that the original bill contained no allegations sufficient to show any ground of equitable jurisdiction in said circuit court of Jefferson county; and that by the removal of said cause to the federal court no such equitable jurisdiction was acquired as entitled the latter court to proceed further therein. The defendants accordingly prayed that the action be dismissed.

The case appears to have been heard below on the foregoing pleadings and the evidence offered in support thereof, whereupon the lower court decreed that the appellants heretofore named acquired no lien upon the lands in controversy, or priority of right thereto, as against the complainant and other creditors of Thomas H. Allen & Co., by virtue of the attachment proceedings instituted by them in the circuit court of Crittenden county;

and in view of that adjudication it was ordered and decreed that the appellants be perpetually enjoined from selling said lands under the judgments obtained in said attachment proceedings, or from asserting any right, lien, or claim to said lands, or any of them, as against the complainant and other creditors of Thomas H. Allen & Co. by virtue of said proceedings in the circuit court of Crittenden county, Ark. The case comes to this court on appeal from that decree.

William M. Randolph (George Randolph and Wassell Randolph, on the brief), for appellants.

J. M. Moore, for appellee.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

THAYER, Circuit Judge (after stating the case as above). From the foregoing summary of the pleadings and proceedings in the lower court, it is manifest that the original bill, which was filed by Nellie Houchens against Thomas H. Allen et al. in the circuit court for the county of Jefferson, state of Arkansas, was a bill to preserve and protect trust property, and to administer a trust, which, as she claimed, had been created for her benefit as well as for the benefit of all the other creditors of the firm of Thomas H. Allen & Co. The bill was filed upon the theory that the assignment executed by the firm of Thomas H. Allen & Co. at Memphis, Tenn., on November 24, 1890, created a trust in favor of all the creditors of that firm, including the complainant, as respects the Arkansas lands which were described in the bill; that this trust had been recognized and confirmed by the composition agreement that was entered into on December 20, 1890, by and between Thomas H. Allen & Co. and the creditors of said firm; and that unforeseen events had thereafter occurred which had interfered with the execution of the trust in the manner contemplated by the parties, and had so far jeopardized the safety of the trust property as to render an appeal for relief to a court of equity both a proper and necessary step. Upon this theory, the complainant below, who is the appellee here, accordingly exhibited a bill for relief in behalf of herself and all other creditors of the aforesaid firm who might see fit to join in the proceeding and contribute to the expense thereof. The bill was originally filed in Jefferson county, Ark., where a part of the trust property was located, and in a court possessing full common-law and equity jurisdiction. The original defendants to the bill, among whom were the assignors and M. B. Trezevant, the assignee named in the deed of assignment, all of whom were citizens and residents of the state of Tennessee, thereupon appeared in that court and obtained an order removing the cause to the federal circuit court for the Western division of the Eastern district of Arkansas, on the ground that Nellie Houchens, the complainant, was a citizen and resident of the state of Louisiana. This order of removal was properly obtained, and vested the federal circuit court with jurisdiction of the case; for although neither of the parties plaintiff or defendant resided in the Eastern district of Arkansas, yet it is now well settled that a citizen of a state who is sued in the courts of a state of which he is neither a citizen nor a resident, by a nonresident of that state, may remove the case to the federal circuit court of the district wherein the

suit was originally brought. In other words, the inhibition found in the act of August 13, 1888 (25 Stat. 433, c. 866), against bringing suits in the federal court otherwise than in the district of which the plaintiff or the defendant is an inhabitant, when jurisdiction depends upon diversity of citizenship, is a privilege accorded to the defendant, which may be waived, and is waived, by a removal under the circumstances above stated. Kansas City & T. R. Co. v. Interstate Lumber Co. (C. C.) 37 Fed. 3; Trust Co. v. McGeorge, 151 U. S. 129, 14 Sup. Ct. 286, 38 L. Ed. 98; Railway Co. v. McBride, 141 U. S. 127, 132, 11 Sup. Ct. 982, 35 L. Ed. 659. After the litigation to protect the trust property and enforce the trust was thus inaugurated, some of the creditors of the firm of Thomas H. Allen & Co., who were also beneficiaries in the alleged trust, namely, the Memphis Savings Bank, the Phœnix Fire & Marine Ins. Co., the City National Bank of Cairo, and the Hill Shoe Company (which is represented on this appeal by C. W. Edmunds, its assignee), who are the present appellants, did not see fit to come in and avail themselves of the benefits of the action which had been brought by the complainant, but, with a view, apparently, of obtaining a preference over the other creditors of that firm, they instituted suits by attachment in various state courts of the state of Arkansas, and caused the writs of attachment to be levied on a part of the alleged trust property, some months after the complainant's bill had been exhibited, and some time after the defendants to that bill had appeared and removed the case to the federal circuit court, and the latter court had obtained full jurisdiction of the controversy. Such action on the part of the attaching creditors led, in the first instance, to an application by the receiver of the trust property, who had been appointed by the federal court on July 1, 1892, for an injunction to restrain them from selling the attached lands under the writs of attachment. At a later date, as heretofore explained, it also led to the filing by the complainant of a supplemental bill, by virtue of which the attaching creditors were made parties defendant to the litigation, and eventually were perpetually enjoined from asserting any right to the lands composing the trust estate under and by virtue of the levy of said writs of attachment.

The decree of the lower court, from which the appeal was taken, is assailed by learned counsel for the appellants on various grounds, but the fundamental question in the case, from our point of view, is whether the assignment which was executed by the firm of Thomas H. Allen & Co. on November 24, 1890, in favor of all their creditors, and the deeds executed by Thomas H. Allen and wife on the same day and subsequently, whereby they conveyed the Arkansas lands to M. B. Trezevant, the assignee, in furtherance of the purposes of the assignment, had the effect of creating a trust in favor of the creditors of the last-named firm as respects the Arkansas lands, which a court of equity will recognize and enforce. It is said that this assignment was not executed, or rather administered, by the assignee in conformity with the statutes of the state of Arkansas regulating general assignments for the benefit of creditors; that the lands in controversy, which formed a part of the assets of said firm, were all situated in the state of Arkansas; and that for these reasons the deed

of assignment was inoperative, and did not have the effect of creating a trust as respects any of the lands situated in that state. It is doubtless true that this contention would be well grounded if the assignment in question had been a purely domestic assignment, executed within the state of Arkansas by persons there domiciled, inasmuch as the assignee failed to file an inventory and bond in the proper office, as the laws of that state direct, and also failed to comply with the local law in some other respects. Because of such neglect to execute the trust in accordance with the local law, it is insisted that no rights were created by the assignment which any creditor of the firm can enforce. Sand. & H. Dig. Ark. §§ 319–324; Raleigh v. Griffith, 37 Ark. 150; Teah v. Roth, 39 Ark. 66; Collier v. Davis, 47 Ark. 367, 1 S. W. 684, 58 Am. Rep. 758. It is to be observed, however, that we are not dealing, on the present occasion, with a local assignment, but with one which was executed in the city of Memphis, Tenn., where the assignors were domiciled and had transacted business for a long time before the assignment was executed. It was a lawful assignment in the state where it was made and delivered, and operated to convey to Trezevant, as assignee, a large amount of property located in that city and state. It was also a valid assignment when tested by the rules of the common law, and did not conflict with any policy of the state of Arkansas in the matter of granting preferences to favored creditors, since all of the creditors of the assignor were accorded equal rights. Moreover, the deeds that were executed by Thomas H. Allen and wife contemporaneously with the deed of assignment and subsequent thereto operated, without any doubt, to vest the legal title to all of the Arkansas lands in Trezevant, the assignee, since these deeds, as well as the assignment, were executed and acknowledged in the manner prescribed by the local law for the conveyance of real property. Under these circumstances, we are of opinion that the deed of assignment and other conveyances were effective to create a trust, as respects the lands located in the state of Arkansas, in favor of all the creditors of the firm of Thomas H. Allen & Co., which trust a court of equity should recognize and enforce, notwithstanding the fact that the assignee named in the deed of assignment did fail to comply with the provisions of the Arkansas statutes relative to the mode and manner of administering the trust. In the case of Paxson v. Brown, 27 U. S. App. 49, 59, 10 C. C. A. 135, 142, 61 Fed. 874, 880, this court said, with respect to an assignment executed in the state of New York, which operated to convey lands situated in the state of Arkansas, but had not been administered in accordance with the assignment law of the latter state, that "the statutes of Arkansas relative to the filing of the inventory and the bond of the assignee relate to domestic assignments,—to assignments made in that state only,—and have no application to an assignment made in another state in accordance with its laws." In the case of May v. Bank, 122 Ill. 551, 13 N. E. 806, it was ruled that the inhibition contained in the assignment law of the state of Illinois against granting preferences to creditors in deeds of assignment applied only to domestic assignments, and not to assignments executed in other states. In accordance with that view it was decided that an assignment with pref-

erences, made in New York, where preferences were allowed, which conveyed land in Illinois, would be upheld against a nonresident attaching creditor, the assignment having been executed in such a form as to satisfy the statutes of Illinois relative to conveyances of realty. A similar ruling was made in Bentley v. Whittemore, 19 N. J. Eq. 462, 97 Am. Dec. 671. And in the state of Minnesota (Paige v. Lumber Co., 31 Minn. 136, 16 N. W. 700), it was held that a statute of that state, which declares every assignment to be void unless the assignee therein named is a resident and freeholder of that state, only has reference to domestic assignments, and does not comprehend assignments made in foreign states by persons there domiciled and doing business, although they convey property located in the state of Minnesota. See, also, Barnett v. Kinney, 147 U. S. 476, 13 Sup. Ct. 403, 37 L. Ed. 247, and cases there cited.

We perceive no reason, therefore, for holding that the statute of Arkansas relative to general assignments, which is above referred to, is applicable to, an assignment executed, as in the present instance, outside of that state, merely because such assignment conveys some property located within the state. Nor do we believe that the statute was intended to comprehend assignments of that character. The rule of comity which prevails among the states requires that a voluntary general assignment made in one state, and there held to be valid, or which is valid at common law, should be recognized and enforced by the courts of another state as respects property situated within the latter state, when, as in the case at bar, the rights of no citizen of the state are jeopardized, and the controversy is wholly between nonresident creditors of the assignor, some of whom are attempting, by process of attachment, to ignore the assignment and secure for themselves an undue preference over other creditors. As will appear from the foregoing citations, this doctrine obtains, so far as personal property is concerned, and no reason is perceived why it should not be extended to real property, when the title thereto has been vested in the nonresident assignee by a conveyance which is in the form prescribed by the lex rei sitæ for the conveyance of real estate.

But if the views last expressed are erroneous, and if it should be conceded that the Arkansas statute concerning voluntary assignments was intended to embrace assignments made in other states by persons there domiciled, provided they convey any property within the state, still we should be of the opinion that the present appellants are estopped by their conduct from denying that the lands now in controversy are held in trust for the common benefit of all the creditors of the firms of Thomas H. Allen & Co. and Richard H. Allen & Co., both of said firms being composed of the same persons. On December 20, 1890, shortly after the assignment and deeds heretofore mentioned had been executed, Thomas H. Allen & Co. made a written proposition to their creditors to issue a series of notes, running 6, 12, 18, and 24 months, and bearing 8 per cent. interest, for the full amount of the debts of said firms. This proposition contained a clause to the effect that the title to the lands conveyed to Trezevant, as trustee, on November 25, 1890, should remain vested in him as security for the payment of said notes until all of them, including the interest

thereon, were fully paid. The firm reserved the power to sell the lands through the agency of the trustee, on condition, however, that the proceeds of such sales as might be made by the firm should be appropriated exclusively to the payment of said notes. This proposition appears to have been accepted by the creditors of said firms, and notes were executed and delivered in conformity therewith shortly after the agreement was executed. This composition agreement, as the record discloses, was signed by the appellants, the Phœnix Fire & Marine Insurance Company, the Memphis Savings Bank, and the Hill Shoe Company (which is represented on this appeal by C. W. Edmunds, its assignee). The City National Bank of Cairo, Ill., which is also one of the appellants, did not sign the agreement, but it subsequently accepted notes, which were executed in conformity therewith, and fully assented thereto. After the composition agreement was thus entered into and the notes were executed and delivered, the firm of Thomas H. Allen & Co. proceeded in good faith to liquidate its indebtedness in the manner contemplated by the composition agreement, and the validity of that agreement does not seem to have been challenged in any manner or by any creditor of the firm until shortly before the present litigation was instituted. In view of these facts we entertain no doubt that the appellants are estopped from denying that the Arkansas lands which form the subject-matter of the present controversy are held in trust for the benefit of the creditors of the firms of Thomas H. Allen & Co. and Richard H. Allen & Co. The composition agreement expressly provided that the lands should be held as security for the payment of the composition notes, and the appellants voluntarily became parties thereto. Moreover, they do not now pretend that they were induced to sign the agreement by reason of any mistake of law or fact, or by reason of any fraudulent representations which entitle them to disregard it. The case in hand is similar, in most respects, to one recently decided by the supreme court of Arkansas. Martin v. Taylor, 52 Ark. 389, 400, 12 S. W. 1011. In that case it appeared that, after a firm had become insolvent and certain attachments had been levied on its property, the creditors of the firm entered into an agreement among themselves and with the members of the firm, whereby all of the firm property was conveyed to certain assignees, who were vested with the power to sell and dispose of the same and distribute the proceeds among the creditors of the firm, preferences being allowed in favor of certain attaching creditors. Subsequently one of the attaching creditors became discontented, and erased his name from the agreement, and then sought to ignore it, and enforce his attachment lien, on the ground that under the laws of Arkansas the agreement amounted to a general assignment for the benefit of creditors, and was void on its face. It was held, however, that the persons who thus attempted to assail the agreement, being parties thereto, and having assented to it, were estopped from challenging its validity. In the case of Paxson v. Brown, 27 U. S. App. 49, 59, 10 C. C. A. 135, 142, 61 Fed. 874, 880, this court applied the same doctrine, holding, in substance, that after creditors had become parties to a voluntary assignment, executed outside of the state of Arkansas, which was good at common law, and had accepted divi-

dends thereunder which had been paid by the assignee, they could not repudiate the assignment on the ground that the assignment was inoperative, and that acts done thereunder were void, because the assignee had not filed a bond and inventory, as the laws of Arkansas required. It is held very generally, and the authorities on this point may be said to be uniform, that creditors who have confirmed an assignment, which might have been avoided, by receiving benefits under it, or who have voluntarily become parties to it with full knowledge of all the facts attending its execution, are afterwards estopped from impeaching it. They cannot play fast and loose, but must make their election to repudiate it before they have accepted any benefits thereunder or by their acts have become parties to it. Adlum v. Yard, 1 Rawle, 163, 171, 18 Am. Dec. 608; Valentine v. Decker, 43 Mo. 583; Rapalee v. Stewart, 27 N. Y. 311; Glass Co. v. Baldwin, 27 Mo. App. 44; Harrison v. Mock, 10 Ala. 185; Stoller v. Coates, 88 Mo. 514, 521, 522, 523; Burrill, Assignm. (6th Ed.) § 454. This doctrine, without doubt, is applicable to the case in hand, and, even if it be conceded that the appellants might have attached the lands in controversy after the execution of the deed of assignment, yet it is clear that they cannot be conceded any such right after becoming parties to the composition agreement, and after consenting that the lands conveyed to Trezevant, as trustee, might be held as security for the payment of the composition notes. Such consent, voluntarily given, estops them from seeking to appropriate the proceeds of those lands exclusively to the payment of their own claims, without reference to the rights of the other creditors.

In the light of what has already been determined, we proceed to notice some other objections to the decree which have been discussed at considerable length.

In the first place, it is said that the lower court had no jurisdiction, because no controversy existed at the time the suit was commenced in the state court, nor when it was removed to the federal court. We understand that what counsel mean by this statement is that no facts were alleged in the bill which would warrant a court of equity in granting equitable relief,—in other words that the bill was demurrable for want of equity. In no other sense can it be said that the lower court was without jurisdiction; since, if such facts were alleged as entitled a court of equity to grant relief, it matters not whether the defendants were contesting the right to such relief or were consenting thereto. The power of the court in which the bill was filed to entertain it, as involving a controversy, did not depend upon the existence of an actual dispute between the litigants over any question, but upon the inquiry whether the complaint alleged such facts as will ordinarily induce a court of chancery to afford relief of any sort. The bill, as heretofore shown, was one to enforce a trust and to protect and preserve trust property. Courts of equity exercise an undoubted jurisdiction in such cases, it being one of their special duties to afford protection to those whose title to property is equitable, and who, for that reason, have no standing in a court of law to enforce their rights. Turning to the averments of the original and supplemental bills, on which the case was eventually tried and determined, we find all the

allegations which were necessary to show that the lands in controversy were held in trust for the benefit of the complainant and other creditors of the firm of Thomas H. Allen & Co., by virtue of the general assignment which had been executed and the subsequent composition agreement. It was further alleged that the beneficiaries in the trust were very numerous, and resided in many different states; that a large portion of the land which was held in trust consisted of plantation property, a part of which was lying idle and unproductive; that the taxes on the property were a heavy burden, and that the trustee was without funds to discharge the same; that although a faithful attempt had been made to carry out and execute the trust in the manner contemplated by the composition agreement, yet the trustee had been greatly embarrassed in that respect by the low price of cotton; that he and the firm of Thomas H. Allen & Co. had been unable to make such a disposition of the property as was originally intended when the trust was created; and that the improvements upon the trust property were in danger of going to waste, and that the value thereof would be greatly impaired in consequence of the unlooked-for obstacles which had been encountered in administering the trust. Although the fact was not specifically averred in the original complaint, yet in all probability it was known to the complainant at the time she exhibited her original bill that these appellants, and possibly some other creditors of the firm of Thomas H. Allen & Co., intended to institute the various attachment suits which they afterwards brought, with a view of defeating the trust and appropriating the proceeds of the Arkansas lands to their exclusive benefit. In view of these facts, and in view of the further fact that the assignment and composition agreement had been executed in a foreign state, we have no doubt that a court of equity could rightfully undertake the administration of the trust when solicited to do so by one of the beneficiaries therein, and in furtherance of that object could also appoint a receiver of the trust property, as was subsequently done. The fact that a trust had been created as respects a large quantity of land situated in the state; that the beneficiaries of this trust were very numerous; that grave difficulties had been encountered in administering it; that questions concerning its validity were liable to arise; that the trust property was deteriorating in value; and that the rights of those who were beneficiaries in the trust might be injuriously affected by proceedings taken by some of the creditors to obtain a preference,—afforded, as we think, sufficient ground for the appointment of a receiver to hold, manage, and administer the property in controversy, subject to the orders of the court, for the protection of all parties in interest. While courts of equity will not take possession of trust property at the instance of a beneficiary, merely for the purpose of administering it, when there are no obstacles in the way of its proper administration by the trustee, and he has been guilty of no misconduct, yet they may do so when such action is necessary to preserve the trust estate or to protect it from a threatened loss. It is well settled that a court of equity will entertain a bill to administer a trust which is filed by one of the beneficiaries in behalf of himself and all other beneficiaries, when the trustee has failed, for any reason, to execute it, and in such cases,

where the trust is created by a general assignment for the benefit of creditors, the claim of the complainant need not have been reduced to judgment against the assignor. Lawton v. Levy, 2 Edw. Ch. 197; Kerr v. Blodgett, 48 N. Y. 62; Weir v. Tannehill, 2 Yerg. 57; Shyer v. Lockhard, 2 Tenn. Ch. 365; Putnam v. Carpet Co. (C. C.) 79 Fed. 454; Collins v. Serverson, 2 Del. Ch. 324; 2 Perry, Trusts, § 595. There is equal reason, we think, for holding that a court of equity may afford such relief when the trustee, without fault of his own, has been prevented from executing the trust in the manner contemplated, or when he finds unlooked-for obstacles in the way of a proper and economical administration of the trust committed to his hands which a court of equity can remove. We are of the opinion, therefore, that the contention on the part of the appellants that the bill of complaint did not disclose a case of equitable cognizance is untenable, and should be overruled.

Learned counsel for the appellants further contend that the lower court had no jurisdiction over a part of the lands in controversy, and no power to appoint a receiver as respects such lands. With reference to this proposition it may be said that it appears from the record that some of the lands in controversy are situated in two counties within the Eastern division of the Eastern judicial district of Arkansas, but the greater portion thereof appear to be located in the Western division of said district. The suit at bar was originally instituted in Jefferson county, Ark., where a part of the land is situated, which is a county within the Western division of the district, and it was thence removed to the federal circuit court for the Western division of the district, which sits at Little Rock. For this reason it is urged that the court, sitting at Little Rock, acquired no jurisdiction over, or power to appoint a receiver of, the lands in the Eastern division of the district. This contention is evidently based upon the assumption that the action at bar is a strictly local action, like a suit in ejectment, or a suit to partition real property, and that, because of that fact, the lower court could only deal with those lands which were situated within the Western division of the district. This theory, however, is erroneous. The suit at bar is not a local action, but a bill to administer a trust, and in such cases courts of equity always act in personam. It is one of the equitable maxims that they so act. Bisp. Eq. § 47. When a court of equity acquires full jurisdiction of the trustee in whom the legal title to trust property is vested, and other necessary parties are before the court, either in obedience to process or by their voluntary appearance, it can compel the trustee to dispose of the legal title and distribute the proceeds thereof as it may direct, although a part of the trust property may be located outside of the territorial limits of its jurisdiction. Such orders, and decrees and conveyances made in pursuance thereof, when they emanate from a court possessing full chancery powers, which has acquired jurisdiction of the trustee and other necessary parties, are respected everywhere as binding upon the parties to the litigation and their privies, although some of the property thereby affected may not be within the territorial jurisdiction of the court. If such were not the rule applicable to such cases, many trusts could not be successfully, or, at least, eco-

nomically administered. Massie v. Watts, 6 Cranch, 148, 3 L. Ed. 181; Muller v. Dows, 94 U. S. 444, 24 L. Ed. 207; McElrath v. Railroad Co., 55 Pa. 189; Le Breton v. Superior Court, 66 Cal. 27, 29, 4 Pac. 777; Bisp. Eq. § 47, and cases there cited.

Aside from this view of the case, certain decisions of the supreme court of the state of Arkansas demonstrate, we think, that the circuit court of Jefferson county, in which this action was originally instituted, could have afforded the relief sought by the bill and appointed a receiver for all of the lands in controversy, those situated within that county as well as those situated in other counties; and, as the case was lawfully removed to the federal circuit court for the proper division of the district, no reason is perceived why that court was not competent to afford the same relief which was obtainable in the state court. The defendants could not deprive complainant of the relief to which she was entitled, and could have obtained, in the state court, by removing it to the federal court. Railway Co. v. Humble, 38 C. C. A. 502, 504, 97 Fed. 837. The Code of Procedure of the State of Arkansas declares, in substance (Sand. & H. Dig. Ark. § 5684), that actions for the recovery of real property, for the partition of the same, and to foreclose mortgages and other liens, as well as actions for injuries to real property, must be brought in the county in which the land, or some part thereof, is situated. This statute treats one action at least as being local, which, but for the statute, would not be so regarded. Nevertheless, it has been held in that state that a bill to set aside fraudulent settlements made by an administrator, to restate his accounts, and also to subject to the payment of the decree certain realty, the title whereto stood in the name of the administrator's wife, was not a local action, but might be brought in the county where the estate was being administered, although the realty standing in the name of the wife was situated in another district or county. Dyer v. Jacoway, 42 Ark. 186, 197. So it has been held in that state that an action in chancery to enjoin the sale of land, under a fraudulent or satisfied mortgage, for an accounting of the amount due on the mortgage, and to cancel fraudulent conveyances of the land, is not a local action, but may be brought in any county where jurisdiction of the defendants can be obtained by personal service of process upon them. Jones v. Fletcher, 42 Ark. 422. It is obvious, therefore, that an action like the one at bar, to administer a trust by direct action on the trustee, would not be regarded in that state as a local action, but as a proceeding in personam. And as a part of the lands in controversy were situated in Jefferson county, where the complainant brought her suit originally, the courts of that state would doubtless hold that the court in which the action was commenced had full power to exercise control, through the trustee, over any lands within the state which formed a part of the trust property, and, if need be, to appoint a receiver thereof. The court to which the case was removed was entitled, in our judgment, to exercise the same power. This view of the case is strongly confirmed by the fact that section 742 of the Revised Statutes of the United States declares that "any suit of a local nature, at law or in equity, where the land or other subject-matter of a fixed character lies partly in one district and partly in another, within the same state, may

be brought in the circuit or district court of either district; and the court in which it is brought shall have jurisdiction to hear and decide it and cause mesne or final process to be issued and executed, as fully as if the said subject-matter were wholly within the district for which such court is constituted." But even if this provision was not found in the Revised Statutes, as the action was not of a local character, and as the federal court had acquired jurisdiction over the trustee and other necessary parties, and the case was one of equitable cognizance, we should be of the opinion that it was entitled to proceed and render full and complete relief, and to exercise control, through the trustee, over all the lands forming a part of the trust estate, which were situated either in the Eastern or in the Western division of the district.

It is further urged in behalf of the appellants that, while the original defendants to the action may have waived all objections to the jurisdiction of the lower court by the removal of the case to that forum, yet this is not true of themselves, the attaching creditors, who subsequently became parties to the litigation in the manner heretofore explained. It is said, in substance, that they have never consented to be sued in the Western division of the Eastern district of Arkansas, and are not inhabitants of that district or state, and that their rights cannot be determined by the federal court for that district. It matters not, however, whether they have so consented or where they may reside. They were not originally named as defendants to the bill, nor was it necessary to do so, although, as creditors of the firm of Thomas H. Allen & Co., they had an undoubted right to intervene in that proceeding and make themselves parties thereto for the protection of their own interests. By the removal of the case to the federal court, that court acquired full jurisdiction of the cause, as we have heretofore held. The proceedings which were subsequently taken against the appellants as attaching creditors were rendered necessary by their attempt to seize and appropriate the trust property to the payment of their own claims to the exclusion of other creditors of Thomas H. Allen & Co., and in open violation of the terms of the composition agreement, which they had signed. The proceedings against the appellants, therefore, were of an ancillary character, being incidental to the exercise of a jurisdiction which had been lawfully acquired. They were such proceedings as might have been taken against any one, without reference to his citizenship, who intermeddled with the trust property after a bill to administer and enforce the trust had been filed and jurisdiction for that purpose over the necessary parties had been lawfully acquired. In the case of Zimmermann v. So Relle, 25 C. C. A. 518, 520, 80 Fed. 417, 419, and in Merritt v. Barge Co., 24 C. C. A. 530, 533, 79 Fed. 228, this court held that "when a suit is brought to enforce a lien against specific property, or to marshal assets, or to administer a trust, or to liquidate an insolvent estate, and in all other cases of a similar kind, where, in the progress of the case, the court may find it necessary or convenient to assume control of the property in controversy, the court which first acquires jurisdiction of such a case, by the issuance and service of process, is entitled to retain it to the end, without interference on the part

of any other court of co-ordinate jurisdiction." We held, further, that "a rigid adherence to this rule, both by the federal and state courts, is necessary in order to prevent unseemly conflicts which might otherwise arise" in dealing with that class of cases. To the same effect are the following cases: Chittenden v. Brewster, 2 Wall. 191, 196, 197, 17 L. Ed. 839; Orton v. Smith, 18 How. 263, 265, 15 L. Ed. 393; Union Trust Co. v. Rockford, R. I. & St. L. R. Co., 6 Biss. 197, 24 Fed. Cas. 704; Union Mut. Life Ins. Co. v. University of Chicago (C. C.) 6 Fed. 443; Heidritter v. Oilcloth Co., 112 U. S. 294, 302, 5 Sup. Ct. 135, 28 L. Ed. 729; Gates v. Bucki, 4 C. C. A. 116, 53 Fed. 961. The federal circuit court had acquired full jurisdiction of the bill, which was filed by the plaintiff to enforce and administer the trust, before any of the writs of attachment were levied, and although the receiver, who was subsequently appointed, may not have acquired actual possession of some of the lands before the levies were made, yet within the doctrine last stated the land was not subject to seizure under the writs of attachment, it being, potentially at least, in custodia legis. Besides, as we have already held, these appellants, by signing the composition agreement and consenting to a sale and disposition of the lands in controversy for the common benefit of all the creditors of Thomas H. Allen & Co., were thereby estopped from prosecuting actions in the state court, with a view of fixing an exclusive lien on the trust property adverse to the rights of other creditors.

A number of other objections to the decree below have been stated and argued at length by counsel for the appellants, all of which have been fully considered, but in view of what has been already decided we only deem it necessary to notice specially one other contention.

It is said that "the appellee is estopped to deny the right of the appellants to have the lands attached in the suits in the Crittenden county circuit court sold under the orders of sale" made by that court. This proposition is based on the following ground: On November 10, 1892, after M. B. Trezevant, the trustee named in the deed of assignment and in the composition agreement, had been appointed receiver of all the lands in controversy, by order of the federal court, he appears to have filed a motion in the attachment suits that were then pending in the circuit court for Crittenden county, Ark., which had been brought by three of the appellants, namely, the Memphis Savings Bank, the Phœnix Fire & Marine Insurance Company, and the City National Bank of Cairo, Ill., against the firm of Thomas H. Allen & Co., wherein he averred, in substance, that he had been appointed receiver of the attached lands lying in said county as early as July 1, 1892, by the federal court; that the writs of attachment had come to the hands of the sheriff of Crittenden county on July 6th and 8th of that year, and that under these circumstances the levies were unauthorized and illegal. The receiver accordingly prayed that the levies, under the various writs of attachment, might be quashed. The court to whom this motion was addressed overruled it for the reason, as its order recites, that, as "the levies in question were made upon real estate * * *

said levies in no way affected the possession of said receiver, and that the granting of the said motion would prevent plaintiff from perfecting * * * his claim under the attachment." This motion was made by the receiver of his own volition, without any order or direction to that effect, and without the knowledge of the court whose officer he was. Under these circumstances it cannot be successfully claimed that the act of the receiver in making this motion, which was doubtless prompted by a desire to treat the process of the state court with proper respect, had the effect of defeating the jurisdiction of the federal court over the Crittenden county lands which it had theretofore lawfully acquired. The jurisdiction over property which a court has once obtained in a judicial proceeding cannot be defeated by an unauthorized act on the part of its receiver. Moreover, the right of the complainant below in and to these lands cannot be impaired by such unwarranted action on the part of the receiver. Furthermore, the adjudication of the state court, which the appellants invoke to enable them to hold the Crittenden county lands, does not purport to be an adjudication that the levy of the writs of attachment upon the lands gave them a superior lien, and that they were not bound by the composition agreement. The state court did not undertake to decide either of these questions, but was apparently of the opinion that the levies which had been made under its process in no wise interfered with the action of the federal court, but left it at full liberty to decide these questions as it thought proper. For these reasons the position taken by the appellants, as respects the Crittenden county lands, must be regarded as untenable.

In conclusion, it is proper to remark that the decree which was rendered by the lower court will manifestly lead to a result which, from any point of view, is just and equitable. It devotes the proceeds of the Arkansas lands to the payment of all of the debts of the insolvent firm, to which the lands belong, without preferences, as the creditors of that concern, including the appellants, agreed that they might be devoted by the terms of the composition agreement.

After a careful consideration of all the arguments that have been adduced by learned counsel for the appellants to sustain their attachment liens and to secure a priority over other creditors, we are satisfied that the decree below was for the right party and that it should be affirmed. It is so ordered.